# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No: 3:13-CV- 404

FILED
CHARLOTTE, NC

JUL 1 5 2013

US District Court
Western District of NC

PLAINTIFFS UNDER SEAL,

                Plaintiffs,

   v.

DEFENDANT UNDER SEAL,

                Defendant.

COMPLAINT

JURY TRIAL DEMANDED

**FILED UNDER SEAL PURSUANT TO
31 U.S.C. § 3730(b)(2)**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No: 3:13-CV-_____

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* TRAVIS THAMS, RELATOR, and on behalf of the STATES of CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, WISCONSIN and the DISTRICT OF COLUMBIA, <br><br> Plaintiff, <br><br> v. <br><br> CARDIOVASCULAR SYSTEMS, INC., <br><br> Defendant. | COMPLAINT <br><br> JURY TRIAL DEMANDED <br><br> **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 2

II.     JURISDICTION AND VENUE .......................................................................... 3

III.    PARTIES .............................................................................................................. 4

        A.      Plaintiff/Relator Travis Thams ............................................................. 4

        B.      Defendant Cardiovascular Systems, Inc. And Its Key Products ............:............ 4

IV.     SUMMARY OF DEFENDANT'S ILLEGAL CONDUCT ................................ 7

        A.      CSI Created An Unlawful Scheme To Increase Its Revenues ............... 7

        B.      CSI Executed Its Scheme Through Kickbacks And Off-Label Marketing ............ 7

V.      BACKGROUND OF THE REGULATORY FRAMEWORK ........................... 9

        A.      The Anti-Kickback Statute Prohibits The Types Of Inducements That CSI
                Offered To Physicians And Hospitals. ................................................. 9

        B.      The FDA Regulates What Medical Devices May Be Marketed And The
                Uses For Which They May Be Marketed, And Prohibits Off-Label
                Marketing. .......................................................................................... 10

        C.      Government Health Care Programs Pay For The Vast Majority Of Medical
                Devices At Issue In This Case ............................................................ 13

VI.     CSI SYSTEMATICALLY ENGAGED IN A KICKBACK SCHEME TO
        INDUCE USAGE OF ITS MEDICAL DEVICES. ......................................... 13

        A.      CSI Hosted "Free" Training Sessions And Then Demanded That
                Physicians Use CSI PAD Devices On Future Patients. ...................... 13

        B.      CSI Promotes Its PAD Devices With Reimbursement Calculators Like
                The Freedom Tool And "Cost Of Calcium" Presentations That Show
                Physicians How They Can Increase Reimbursements ......................... 15

        C.      CSI Orchestrates Valuable Referrals To Physicians Who Then Use CSI's
                PAD Devices. ..................................................................................... 17

        D.      CSI Offers Substantial Assistance To Physicians Who Want To Open
                Outpatient Labs And Who Return The Favor By Using CSI PAD Devices ......... 19

i

E.      CSI Offers Sham Speaker Payments To Frequent-Users Of CSI PAD Devices And To Other Targeted Physicians. ...................................................... 20

VII.    CSI AGGRESSIVELY OFF-LABEL MARKETED ITS PAD MEDICAL DEVICES TO INCREASE REVENUE........................................................................ 21

A.      Promotion for use with a smaller catheter – 4-French – when the approval was limited to the larger 6-French catheter enables off-label use in far more blood vessels.............................................................................. 21

B.      Promotion for use in areas of the body (e.g., coronaries and the arms) and disease states (e.g., chronic total occlusions) for which the devices lacked FDA-approval............................................................................................ 22

VIII.   CSI'S HIPAA VIOLATIONS SHOW ITS GENERAL DISREGARD FOR THE LAW ............................................................................................................. 25

COUNT I (Violation of False Claims Act, 31 U.S.C. § 3729(a)(1))............................ 25

COUNT II (Violation of False Claims Act, 31 U.S.C. § 3729(a)(2)) ......................... 25

COUNT III (Violation of False Claims Act, 31 U.S.C. § 3729(a)(3)).......................... 26

COUNT IV (Violation Of False Claims Act, 31 U.S.C. § 3729(A)(7))........................ 26

COUNT V (Violation of California False Claims Act).................................................. 27

COUNT VI (Violation of Colorado False Claims Act) ................................................ 28

COUNT VII (Violation of Connecticut False Claims Act) .......................................... 29

COUNT VIII (Violation of Delaware False Claims and Report Act)........................... 31

COUNT IX (Violation of District of Columbia False Claims Act) ............................. 32

COUNT X (Violation of Florida False Claims Act) .................................................... 33

COUNT XI (Violation of Georgia Medicaid False Claims Act) ................................. 34

COUNT XII (Violation of Hawaii False Claims Act)................................................... 36

COUNT XIII (Violation of Illinois Whistleblower Reward and Protection Act)......... 37

COUNT XIV Violation of Indiana False Claims and Whistleblower Protection Act) .............. 38

COUNT XV (Violation of Louisiana Medical Assistance Programs Integrity Law) ................. 39

COUNT XVI (Violation of Maryland False Health Claims Act) ................................. 41

COUNT XVII (Violation of Massachusetts False Claims Act)................................................ 42

COUNT XVIII (Violation of Michigan Medicaid False Claims Act)................................................ 43

COUNT XIX (Violation of Minnesota Medicaid False Claims Act)................................................ 45

COUNT XX (Violation of Montana False Claims Act)................................................ 46

COUNT XXI (Violation of Nevada Submission of False Claims to State or Local Government Act)................................................ 47

COUNT XXII (Violation of New Hampshire Medicaid False Claims Act)................................................ 49

COUNT XXIII (Violation of New Jersey False Claims Act)................................................ 50

COUNT XXIV (Violation of New Mexico Medicaid False Claims Act)................................................ 51

COUNT XXV (Violation of New York False Claims Act)................................................ 53

COUNT XXVI (Violation of North Carolina False Claims Act)................................................ 54

COUNT XXVII (Violation of Oklahoma Medicaid False Claims Act)................................................ 55

COUNT XXVIII (Violation of Rhode Island False Claims Act)................................................ 57

COUNT XXIX (Violation of Tennessee Medicaid False Claims Act)................................................ 59

COUNT XXX (Violation of Texas Human Resources Code, Medicaid Fraud Prevention Chapter)................................................ 60

COUNT XXXI (Violation of Virginia Fraud Against Taxpayers Act)................................................ 61

COUNT XXXII (Violation of Wisconsin False Claims for Medical Assistance Act)................................................ 63

# COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS
# UNDER 31 U.S.C. § 3729 *ET SEQ.* AND STATE LAW COUNTERPARTS

This is an action brought on behalf of the United States of America and the *Qui Tam*

States by Travis Thams ("Relator"), by and through his attorneys, against Defendant

Cardiovascular Systems, Inc. ("CSI" or "Defendant"), pursuant to the *qui tam* provisions of the

Federal Civil False Claims Act, 31 U.S.C. § 3729, *et seq.* (the "False Claims Act" or "FCA") and

pursuant to the *qui tam* provisions of the following States: the California False Claims Act, CAL.

GOV'T CODE § 12650 (Deering 2000), *et seq.*; the Colorado False Claims Act, COLO. REV.

STAT. §25.5-4-304 (2010), *et seq.*; the Connecticut False Claims Act, 2009 CONN. PUB. ACTS

NO. 09-5 (Sept. Spec. Sess.), *et seq.*; the Delaware False Claims and Reporting Act, DEL.

CODE ANN. Tit. 6, § 1201 (2000), *et seq.*; the District of Columbia False Claims Act, D.C.

CODE ANN. § 2-308.13 (2000), *et seq.;* the Florida False Claims Act, FLA. STAT. 68-081

(2000), *et seq.*; the Georgia False Medicaid Claims Act, GA. CODE ANN.§ 49-4-168 (2007), *et*

*seq.*; the Hawaii False Claims Act., HAW. REV. STAT. § 661-22 (2006) *et seq.*; the Illinois

Whistleblower Reward and Protection Act, 740 ILL. COMP. STAT. ANN. § 175/1 (2000), *et*

*seq.*; the Indiana False Claims and Whistleblower Protection Act, INDIANA CODE § 5-11-5.5,

(2007) *et seq.*; the Louisiana Medical Assistance Programs Integrity, LA. REV. STAT. ANN.

§ 46.439.1 (2006), *et seq.;* the Maryland False Health Claims Act of 2010, M.D. CODE ANN.

ch. 4, § 2-601 (2010), *et seq.*; the Massachusetts False Claims Act, MASS. ANN. LAWS ch. 12,

§ 5(A), (2007) *et seq.*; the Michigan Medicaid False Claims Act, MICH. COMP. LAWS SERV.

§ 400.601, (2007) *et seq.*; the Minnesota False Claims Act, MINN. STAT. § 15C.01, *et seq.*; the

Montana False Claims Act, MONT. CODE ANN. § 17-8-401 (2005), *et seq.*; the Nevada

Submission of False Claims to State or Local Government Act, NEV. REV. STAT. § 357.010

(1999), *et seq.*; the New Hampshire Medicaid False Claims Act, N.H. REV. STAT. ANN.

1

§ 167:61-b (2005), *et seq.*; the New Jersey False Claims Act, N.J. STAT. ANN. § 265 (2007); the New Mexico Medicaid False Claims Act, N.M. STAT. ANN. § 27-14-1 (2007), *et seq.*; the New York False Claims Act, N.Y. CLS ST. FIN. § 190.6. (2007), *et seq.*; the Nevada Submission of False Claims to State or Local Government Act, NEV. REV. STAT. § 357.010 (1999), *et seq.*; the North Carolina False Claims Act, N.C. GEN. STAT. § 1-605, *et. seq.*; the Oklahoma Medicaid False Claims Act, OKLA. STAT. tit. 63, § 5053 (2007), *et seq.*; the Rhode Island False Claims Act, R.I. GEN. LAWS § 9-1.1-1 (2008), *et seq.*; the Tennessee Medicaid False Claims Act, TENN. CODE ANN. § 71-5-181(c) (2006), *et seq.*; the TEX. HUM. RES. CODE § 36.001 (2006), *et seq.*; the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 (2006), *et seq.*; and the Wisconsin False Claims for Medical Assistance Act, WIS. STAT. § 20.931 (2007), *et seq.*, (collectively, the "State *qui tam* statutes" or "*Qui Tam* States").

## I.    INTRODUCTION

1.      This is an action to recover damages and civil penalties on behalf of the United States and the *Qui Tam* States arising from false and/or fraudulent records, statements, and claims made, used and caused to be made, used or presented by Defendant and/or its agents, employees, or co-conspirators under the False Claims Act and the State *qui tam* statutes.

2.      CSI has successfully engaged in a fraudulent marketing scheme (also, "scheme," discussed in more detail herein) to maximize its profits through an ongoing pattern of fraud and deception involving illegal kickbacks, off-label promotion, and violations of FDA laws and regulations in connection with its medical devices used for the treatment of Peripheral Arterial Disease ("PAD").  Those devices include CSI's Diamondback 360 device, Predator 360 device, and Stealth 360 device (collectively, CSI's "PAD devices").

3.      CSI's PAD devices are atherectomy systems designed to treat occlusive PAD.  The devices are electrically driven and utilize an eccentrically mounted diamond-coated "crown" to

sand away hard calcified plaque within the peripheral arteries. The system operates on the principles of centrifugal force. As the crown "spins" at between 60,000 and 120,000 revolutions per minute within the target artery the calcified plaque is effectively "sanded" away, restoring blood flow to distal arteries. As the crown rotates and the orbit increases, centrifugal force presses the crown against the calcified plaque, removing a small amount of plaque with each orbit. The orbit size is determined by crown weight and "spinning" speed. The heavier the crown and the faster the "spin" the larger the orbit and larger the lumen created. The calcified plaque is sanded into small particles and allowed to be carried away in the blood stream.

4.     Other treatments for PAD include balloon angioplasty, which has a substantially longer record of safe and effective use, and which costs substantially less, than procedures performed using CSI's PAD devices.

## II.     JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1345. The Court has original jurisdiction of the State law claims pursuant to 31 U.S.C. § 3732(b) because this action is brought under State laws for the recovery of funds paid by the *Qui Tam* States, and arises from the same transactions or occurrences as the claims brought on behalf of the United States under 31 U.S.C. § 3730.

6.     This Court has personal jurisdiction over the Defendant because, among other things, Defendant transacts business in this District and engaged in wrongdoing in this District.

7.     Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and (c). Defendant transacts business within this District, and acts proscribed by 31 U.S.C. § 3729 occurred in this District.

3

8. The causes of action alleged herein are timely brought because of, among other things, efforts by the Defendant to conceal their wrongdoing in connection with the allegations made herein.

## III. PARTIES

### A. PLAINTIFF/RELATOR TRAVIS THAMS

9. Plaintiff/Relator Travis Thams ("Relator" or "Thams") is a resident of Spokane, Washington. He has a B.A. in Marketing from Washington State University and has worked in the medical device industry since 1999. Relator was recruited to CSI in 2012 and served as a District Sales Manager until February 2013. At CSI, Relator was responsible for selling the entire portfolio of CSI products.

10. Relator is an original source of the kickback and off-label promotion allegations in this Complaint, and these allegations are not based upon publicly-disclosed information. He has provided the government with material information prior to the filing of this Complaint in accordance with 31 U.S.C. § 3730(b)(2).

### B. DEFENDANT CARDIOVASCULAR SYSTEMS, INC. AND ITS KEY PRODUCTS

11. Defendant CSI is a public company incorporated in Delaware and headquartered at 651 Campus Drive, St. Paul, Minnesota 55112.

12. CSI is listed on the Nasdaq Stock Exchange and trades under the symbol CSII.

13. CSI markets the Diamondback 360 device, Predator 360 device, and Stealth 360 device as treatments for PAD. CSI refers to these devices as "the peripheral Orbital Atherectomy System, from CSI." The System "applies the basic principles of centrifugal force to defeat complex calcium" in patients' arteries. "CSI's Orbital Atherectomy System is a percutaneous orbital atherectomy system indicated for use as therapy in patients with occlusive atherosclerotic disease in peripheral arteries and stenotic material from artificial arteriovenous

4

dialysis fistulae. The System is contraindicated for use in coronary arteries, bypass grafts, stents, or where thrombus or dissections are present. Although the incidence of adverse events is rare, potential events that can occur with atherectomy include: pain, hypotension, CVA/TIA, death, dissection, perforation, distal embolization, thrombus formation, hematuria, abrupt or acute vessel closure, or arterial spasm."

14. CSI's Stealth 360 device – its most popular and profitable device – "is a percutaneous orbital atherectomy system indicated for use as therapy in patients with occlusive atherosclerotic disease in peripheral arteries and who are acceptable candidates for percutaneous transluminal atherectomy. The OAS supports removal of stenotic material from artificial arteriovenous dialysis fistulae (AV shunt). The OAS is a percutaneous orbital atherectomy system indicated as a therapy in patients with occluded hemodialysis grafts who are acceptable candidates for percutaneous transluminal angioplasty." CSI's Predator 360 device has the same FDA-approved indication, and its earlier Diamondback 360 device has the same FDA-approved indication except for the last sentence, which is not included in the Diamondback's indication.

15. Many medical device companies voluntarily join and profess that they comply with the Code of Ethics of the Advanced Medical Technology Association (AdvaMed), http://advamed.org/. AdvaMed is similar to the Pharmaceutical Researchers and Manufacturers of America ("PhRMA") and its "PhRMA Code," which the Office of Inspector General of the Department of Health and Human Services (the "OIG") describes as "useful and practical advice for reviewing and structuring these relationships." Importantly, the PhRMA Code is cited in the OIG's compliance program guidance for pharmaceutical manufacturers, in which the OIG states: "Although compliance with the PhRMA Code will not protect a manufacturer as a matter of law under the anti-kickback statute, it will substantially reduce the risk of fraud and abuse and help

demonstrate a good faith effort to comply with the applicable federal health care program requirements."

16.     CSI makes no such illusions about complying with AdvaMed's code of ethics. During at least one training session CSI explained that AdvaMed encourages competitors to report on each other and CSI left its new trainees with the following rhetorical question: Everyone pays dues. Why should we pay for someone *else* to regulate us? We can regulate ourselves!

17.     CSI prides itself on aggressively marketing its products and driving its sales representatives to increase revenues. Senior management at CSI bragged about having a 44% turnover rate – making clear that individuals who were not gaining new sales were quickly forced out of the company. CSI sales representatives were given a marketing budget of $28,000 each – more than twice the pharmaceutical industry average – and more money was generally available for successful representatives.

18.     CSI was also focused on meeting revenue forecasts set by Wall Street analysts, all in contemplation of a possible sale or offering of the company. For example, CSI Regional Sales Manager John Wilhelmy emailed his sales representatives that a certain amount of revenue was "required" before the end of the quarter. In an email with the subject line "Revenue REQUIRED EOQ" he wrote: "Team, With just 5 selling days left here is what we each must deliver…$8500 EACH DAY!!!" CSI Area Sales Director Richard Roberts commended Wilhelmy's email, writing: "Great way of laying it out! I don't care if you have to stab someone, it's time to blow this thing out[.]"

19.     CSI has a cooperative relationship with National Cardiovascular Partners ("NCP") and offers NCP's services in starting and operating outpatient cardiac catheterization

labs ("OBLs") to physicians that CSI regularly details. Effectively, CSI is a major source of customers (i.e., physicians) for NCP. In return and as a reward for these referrals, NCP OBLs favor CSI PAD devices. In fact, NCP OBLs are among CSI's largest customers. This agreement benefits CSI and NCP, but not the government-funded health care programs that provide reimbursements for CSI's more-expensive medical devices and for the overuse of those devices.

## IV. SUMMARY OF DEFENDANT'S ILLEGAL CONDUCT

### A. CSI CREATED AN UNLAWFUL SCHEME TO INCREASE ITS REVENUES

20.     CSI has and continues to engage in a broad, unlawful scheme to increase the sales of its Diamondback 360 device, Predator 360 device, and Stealth 360 device. On information and belief, CSI is interested in attracting additional investors and/or selling itself and increasing its sales will allow it to obtain a higher sales price for itself and/or a more favorable valuation from new investors. It was the plan and purpose of CSI's scheme, beginning at least as early as 2010 and continuing to the present, to reap substantial profits by engaging in a deliberate pattern of fraud and deception involving (i) illegal kickbacks, (ii) off-label promotion and (iii) violations of FDA laws and regulations in connection with its medical devices.

### B. CSI EXECUTED ITS SCHEME THROUGH KICKBACKS AND OFF-LABEL MARKETING

21.     CSI executed its scheme primarily thorough unlawful kickbacks and utilized its sales force to illegally promote the off-label sales and use of its medical devices in order to obtain reimbursement for non-FDA-approved indications and maximize profits through false and fraudulent statements.

22.     CSI's kickback scheme was designed to and did influence doctors and other medical personnel to use CSI's medical devices. The kickbacks included: "free" all-expense-paid training programs followed by explicit demands by CSI employees that attendees use CSI

products on future patients; selling using reimbursement calculators to show physicians could maximized their financial return by using CSI devices, including for unnecessary procedures; "free" product to induce the purchase of other product; referral channel marketing, though which CSI would target third-party physicians to refer patients to physicians who would use CSI devices in return for these referrals; substantial assistance to help physicians open outpatient cardiac catheterization labs ("OBLs"); and sham Speaker Bureau payments for high-prescribers and others whom CSI sought to cultivate. CSI's *quid pro quo* kickback strategy was intended to and did induce physicians to use and obtain reimbursement for use of CSI medical devices on patients covered by Medicare, Medicaid, and other government payors.

23.     CSI's off-label marketing ("OLM") scheme was designed to and did influence doctors and other medical personnel to use CSI's medical devices for procedures that are not medically necessary or reasonable and necessary. The OLM included: promotion of CSI's PAD devices for use with a smaller catheter – 4-French – when the approval was limited to the larger 6-French catheter; and promotion for use in areas of the body (e.g., coronaries and the arms) and disease states (e.g., chronic total occlusions) for which the devices lacked FDA-approval. CSI's OLM strategy was intended to and did induce physicians to use and obtain reimbursement for use of CSI medical devices on patients covered by Medicare, Medicaid, and other government payors.

24.     CSI concealed its unlawful conduct related to the promotion and sale of medical devices by falsely certifying its compliance with Federal and State laws.

25.     CSI's unlawful kickbacks and off-label promotion involved the unlawful making of false records or statements and/or causing false claims to be submitted for the purpose of

8

getting the false records or statements to obtain payment or reimbursement of false or fraudulent claims.

26.     CSI's conduct had a material effect on the Governments' decision to pay for procedures using CSI's medical devices. Had the Federal Government and *Qui Tam* States known that CSI had induced the use of its medical devices through widespread kickbacks and/or through a scheme of widespread off-label promotion, they would not have made such reimbursements.

27.     CSI unlawful kickback and OLM schemes are ongoing.

## V.     BACKGROUND OF THE REGULATORY FRAMEWORK

### A.     THE ANTI-KICKBACK STATUTE PROHIBITS THE TYPES OF INDUCEMENTS THAT CSI OFFERED TO PHYSICIANS AND HOSPITALS.

28.     The Anti-Kickback Statute ("AKS") prohibits the payment and receipt of kickbacks in return for either procuring or recommending the procurement of a good, facility, or item to be paid in whole or in part by a federal healthcare program. 42 U.S.C. § 1320a-7b(b).

29.     Compliance with the AKS is a condition of receiving payment from federally-funded healthcare programs, including Medicare, Medicaid, and TRICARE.

30.     For example, in order to establish eligibility to receive reimbursement from Medicare, both hospitals and physicians must sign a Provider Agreement that states: "I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the [provider's] compliance with all applicable conditions of participation in Medicare." Hospitals must also submit a Hospital Cost Report along with their claims for reimbursement that states: "if services identified in this report [were] provided or procured through the payment directly or

9

indirectly of a kickback or where otherwise illegal, criminal, civil and administrative action, fines and/or imprisonment may result," and "certify that I am familiar with the laws and regulations regarding the provisions of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations." Physicians and hospitals that used CSI PAD devices and sought reimbursement for those products and procedures from government-funded health care programs signed and/or certified compliance with these Provider Agreements and/or Hospital Cost Reports.

31.     A "claim that includes items or services resulting from a violation of" the AKS "constitutes a false or fraudulent claim for purposes of" the FCA. 42 U.S.C. § 1320a-7b(g).

32.     Compliance *vel non* with the AKS is a material determinant of whether from federally-funded healthcare programs, including Medicare, Medicaid, and TRICARE, will reimburse claims. That is, the presence of kickbacks influence federally-funded healthcare programs' decisions as to whether to pay hospital and physician claims.

**B.     THE FDA REGULATES WHAT MEDICAL DEVICES MAY BE MARKETED AND THE USES FOR WHICH THEY MAY BE MARKETED, AND PROHIBITS OFF-LABEL MARKETING.**

33.     The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, regulates the approval and marketing of medical devices.

34.     No medical device may be marketed in the United States without prior approval by the Food and Drug Administration ("FDA") for its intended use. 21 U.S.C. § 360.

35.     The FDCA creates three categories of devices that are subject to increasing levels of regulatory oversight: Class I (low risk, general controls), Class II (medium-risk, special controls), and Class III (high-risk, premarket approval). 21 U.S.C. § 360c(a)(1).

36.     A Class II device – like each of CSI's PAD systems – is a "device which cannot be classified as a class I device because the general controls by themselves are insufficient to

provide reasonable assurance of the safety and effectiveness of the device, and for which there is sufficient information to establish special controls to provide such assurance, including the promulgation of performance standards, postmarket surveillance, patient registries, development and dissemination of guidelines (including guidelines for the submission of clinical data in premarket notification submissions in accordance with section 510(k) [21 U.S.C. § 360(k)]), recommendations, and other appropriate actions as the Secretary deems necessary to provide such assurance. For a device that is purported or represented to be for a use in supporting or sustaining human life, the Secretary shall examine and identify the special controls, if any, that are necessary to provide adequate assurance of safety and effectiveness and describe how such controls provide such assurance." 21 U.S.C. § 360c(a)(1)(B).

37.     A medical device is approved only for its specific "intended uses" or "the objective intent of the persons legally responsible for the labeling of the devices." 21 C.F.R. § 801.4.

38.     To avoid the costly and time-consuming FDA premarket-approval process, manufacturers of medical devices can seek "510(k)" clearance based upon prior approval of a substantially equivalent device. 21 U.S.C. § 360(k); 21 C.F.R. § 807.87(k).

39.     To obtain 510(k) clearance to market a device, the manufacturer must submit a premarket notification, including a certified "statement that the submitter believes, to the best of his or her knowledge, that all data and information submitted in the premarket notification are truthful and accurate and that no material fact has been omitted." 21 C.F.R. § 807.87(k). The notification must include the intended uses of the device, the conditions the device is designed to treat, and the relevant patient population. 21 C.F.R. § 807.92(a)(5).

40.     Clearance through the 510(k) process does not constitute FDA "approval" of the device; it limits the cleared use of the device to those indications listed in the 510(k) application as the intended uses. 21 U.S.C. § 352(f); 21 C.F.R. § 801.5; 21 C.F.R. § 807.97. These limited indications must be listed on the label, and a manufacturer may only promote a device for cleared or approved indications. 21 U.S.C. § 352(f); 21 C.F.R. § 807.81(a)(3).

41.     Any promotion of a device for any indication not approved or cleared by the FDA and indicated on the label is considered an "off-label" promotion and is unlawful. *See* 21 U.S.C. § 331(d).

42.     The Medicare Act provides only excludes coverage for "any expenses incurred for items or services [which] are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member[.]" 42 U.S.C. § 1395y(a)(1)(A).

43.     TRICARE has similar restrictions on reimbursement for off-label use. See 32 C.F.R. § 199.4(a)(1)(i) & 2007 TRICARE Policy Manual, ch. 8, § 5.1(III)(B) (excluding coverage for "off-label uses of devices").

44.     CSI's PAD devices are considered medium-risk, Class II devices. These devices were cleared by the FDA for entry into the market through the less-costly and less-comprehensive 510(k) process.

45.     In August 2007, the FDA granted CSI 510(k) clearance for the use of the Diamondback 360 as a therapy in patients with PAD. CSI was granted 510(k) clearance of the Predator 360 in March 2009 and the Stealth 360 in March 2011.

12

C.      GOVERNMENT HEALTH CARE PROGRAMS PAY FOR THE VAST MAJORITY OF MEDICAL DEVICES AT ISSUE IN THIS CASE.

46.      The federal and state governments pay for the vast majority of costs associated with medical devices. According to at least one source, 80% of all payments for medical devices are made through Medicare and Medicaid.

47.      PAD is a disease that disproportionately impacts older individuals. According to the Vascular Disease Foundation, PAD affects at least 8 to 12 million Americans and one in three people age 70 or older has PAD. The disease prevalence increases with age, and approximately 56-63% of those suffering from PAD are aged 65 and older. *See* http://vasculardisease.org/education-prevention/knowledge-is-power/vascular-disease-statistics/.

48.      Given that individuals over age 65 are generally covered by Medicare or another government funded health program, government funded health programs paid for the vast majority of procedures that resulted from CSI's kickback and OLM scheme – procedures that the government funded health programs otherwise would not have reimbursed.

49.      Even many of the younger patients with PAD are covered by government funded health programs. For example, many younger patients with PAD suffer from advanced diabetes and are on disability from that condition, and therefore are covered by a state Medicaid program.

## VI.   CSI SYSTEMATICALLY ENGAGED IN A KICKBACK SCHEME TO INDUCE USAGE OF ITS MEDICAL DEVICES.

A.      CSI HOSTED "FREE" TRAINING SESSIONS AND THEN DEMANDED THAT PHYSICIANS USE CSI PAD DEVICES ON FUTURE PATIENTS.

50.      CSI hosted various medical education ("Med Ed") and training courses for physicians. These "free" courses served the dual purpose of training physicians to use CSI PAD devices and ensuring that these physicians would use CSI PAD devices in return for this valuable training.

51.     CSI offered these training courses at desirable locations and usually covered attendees' full expenses including luxury hotel, airfare, meals, and incidental expenses. For example, CSI held training sessions at Miami Beach's Fontainebleau Hotel – "a spectacular blend of Golden Era glamour and modern luxury" – in January 2013, as well as other similar courses in New York, San Francisco, and Washington, DC.

52.     Though these courses were ostensibly for medical education, CSI's sales representatives were encouraged to invite as many physicians as would accept invitations – provided that those physicians would then utilize CSI PAD devices on future cases.

53.     CSI senior management made clear that these "training" sessions were held to drive sales to CSI, and that CSI sales representatives should "demand[]" that physicians who attend the free trainings reward CSI by using CSI PAD devices for at least their next 5 or 10 cases.

54.     For example, in preparation for a training session in San Francisco in November 2012, Jim Breidenstein, CSI's Vice President of Sales, exhorted sales representatives company-wide: "As you know, getting a doc to the course is only one small step to fully converting them [to] CSI. Please set proper expectations, make sure the next 10 cases are your cases, *no matter what*." (emphasis added). Similarly, following an October 2012 Med Ed event at NYU in New York, Breidenstein emailed his sales representatives: "Now that the course is over, what is your follow up plan of attack? It is your *right* to ask for their next 5 cases, hopefully this week. Gaining commitment to treat immediately post course is a major way to convert your doctors. I know it seems basic, but how many of you are *demanding* his/her next 5 cases immediately post course?" (emphases added).

14

55.     As Breidenstein's communications to his sales representatives make clear, CSI's kickback scheme was designed to and did influence doctors and other medical personnel to use CSI's medical devices.

56.     CSI's *quid pro quo* kickback strategy was intended to and did induce physicians to use and obtain reimbursement for use of CSI medical devices on patients covered by Medicare, Medicaid, and other government payors.

**B.  CSI PROMOTES ITS PAD DEVICES WITH REIMBURSEMENT CALCULATORS LIKE THE "FREEDOM TOOL" AND "COST OF CALCIUM" PRESENTATIONS THAT SHOW PHYSICIANS HOW THEY CAN INCREASE REIMBURSEMENTS.**

57.     CSI marketed its PAD devices by using reimbursement calculators to show physicians could maximize their revenue by using CSI PAD devices.

58.     CSI sales representatives used a reimbursement calculator called "The Freedom Tool" to show physicians that using the CSI PAD devices could increase physicians' profits.

59.     The Freedom Tool showed that physicians would earn more than twice as much – $1300 per vessel versus just over $600 per vessel (or less) – by using a CSI PAD device to spin a blood vessel instead of performing a balloon angioplasty, which is an alternative treatment and the recognized standard of care. That is, CSI sold its substantially more expensive PAD devices by appealing to physicians' profit motives. CSI's Vice President of Sales would instruct his sales representatives to use the Freedom Tool to sell CSI's "MARGIN STORY."

60.     CSI's "MARGIN STORY" was that physicians could increase their margins and profits by using and overusing CSI PAD devices.

61.     CSI's intensive presentations to physicians on the positive economics for using CSI PAD devices – positive for CSI and for the physicians, but not for government funded health care programs – made clear CSI's purpose: increase its own sales by showing physicians how to profit using and overusing CSI PAD devices.

15

62.     CSI also promoted the revenue-generation of its PAD devices through "Cost of Calcium" presentations delivered by Brian Doughty (nicknamed "Robo"), CSI's Vice President of Corporate Operations. This presentation aimed at increasing the use of CSI PAD devices in arteries – an area for which the devices lacked FDA-approval – and other blood vessels.

63.     Ostensibly, the PAD devices would removing potentially dangerous calcium in those areas, but the Cost of Calcium presentations made clear that physicians should use the PAD devices even when there was no evidence of calcium in the vessels. CSI encouraged this use and assured physicians that even if there was no calcium in the vessels, they would not do any harm by performing the procedure with the PAD devices. That is, CSI actively encouraged overuse of its PAD devices in patients who had no evidence of calcium in their vessels and for whom treatment was not medically necessary. CSI's off-label marketing, discussed below, furthered this part of CSI's scheme.

64.     The Freedom Tool and the Cost of Calcium presentations encouraged doctors to perform potentially risky and unnecessary procedures that were then reimbursed by government funded health programs at a cost of approximately $3,400 per patient.

65.     CSI knew that this large reimbursement for a quick procedure would drive usage, and it sold it to physicians on this basis. As Breidenstein, CSI's Vice President of Sales, wrote to his staff: "make the calls, present the CALCIUM DATA, tell the MARGIN story."

66.     CSI knew that selling the margin story was an effective way to convert physicians to become users of CSI's PAD devices. As Doughty explained: "Every C of C convo . . . pays off in short[,] medium[,] and long term harvests." Doughty further noted that as a direct result of these presentations, "[c]ases occur *that would not have* the very next day[.]" (emphasis added)

CSI flew Doughty around the country to deliver COST OF CALCIUM talks in an effort to convert additional customers.

67.     CSI knew the impact of the Cost of Calcium presentations.  As CSI Area Sales Director Jason Fore wrote: "Without a doubt, this is the single most important message we have right now . . . ."

68.     CSI tracked physician usage and physicians who had been presented The Freedom Tool and the Cost of Calcium presentations had the among the greatest market shares of CSI PAD device use among any physicians in the country.

### C.     CSI OFFERS "FREE" PRODUCT TO INDUCE THE PURCHASE OF OTHER PRODUCT

69.     CSI offered valuable consideration to physicians in the form of "free" CSI product – that was later billed to government payors – when physicians purchased other CSI product.  For example, CSI consistently offered a buy-6-get-1-free deal to physicians purchasing its Stealth devices.  Given that these devices listed for $4395 each and sold at a contract price of $3395 each, this represents a multi-thousand-dollar kickback on each such order.

70.     As CSI Regional Sales Manager Wilhelmy instructed his sales representatives: "find a way to drop in 6 Stealth and offer 1 for free!!!"  He further CSI encouraged sales representatives to "d[o] the math for your customer [to] show a significant % and $ saving."

71.     CSI offered other accounts, like St. Joseph's Regional Medical Center, Kootenai Medical Center, and Walla Walla General Hospital, both a "free" Stealth device and a "free" saline infusion pump, a total kickback of $8,390.  CSI offered Kadlec Medical Center that deal, plus free ViperWire Advanced Guide Wires and Lubricant, a kickback valued at $10,730.  CSI also offered Walla Walla General Hospital two "free" boxes of Asahi guide wires if Walla Walla purchased two other boxes of Asahi guide wires.

72. CSI trained and instructed its sales representatives to offer these "free" products as kickbacks to drive sales. As Wilhelmy instructed his troops: "Please ensure that you do not leave any money on the table!!!"

**D.    CSI ORCHESTRATES VALUABLE REFERRALS TO PHYSICIANS WHO THEN USE CSI'S PAD DEVICES.**

73. CSI offered valuable consideration to physicians in the form of referrals of patients. In return for these referrals, the physicians to whom the patients were referred would use CSI PAD devices on those patients. Absent CSI's referral scheme kickbacks, the physicians would have needed to expend their own resources to attract new patients – but also would have been far more likely to use other, less expensive procedures instead of being beholden to CSI.

74. CSI orchestrated this scheme by instructing its sales representatives to make sales calls to physicians and other health care providers who do *not* use CSI products – like podiatrists, nephrologists, wound care centers, home care nurses, dialysis techs, family-care doctors, orthopedic clinics, diabetes nurses, and senior citizen support organizations – but who could refer their patients to the cardiologists and vascular surgeons who do use CSI PAD devices. Once CSI sales representatives arranged these referrals, they effectively captured the business of the cardiologists and vascular surgeons, who became dependent on the CSI sales representatives for new patients.

75. As Gary Hall, as CSI sales representative recounted: "I need Pod[iatrists] to refer cases so I get cases. . . .[One podiatrist] basically has 4 reads for Monday that he is willing to give to one of my Docs" – i.e., cardiologists and vascular surgeons. "In one week I got 1 new Pod for 8 cases per month and now this new Pod has 4 reads and patients to funnel to my Doc . . . I don't want to say its [sic] like shooting fish in a barrel....but it kinda is." CSI also touted the financial benefits to referring physicians of increasing their screenings, which would drive more

18

patients to physicians who used CSI PAD devices. For example, CSI marketed an "Equation for Success" to referring physicians, showing them that they could realize an additional $50,000 per year in income simply by performing two more screenings per day.

76. CSI knew that "we may not conduct practice building" and was well-aware of the "inducement risk" in such activities as described above. But, instead of not undertaking such activities, CSI told its sales representatives that they would be protected by a "safe harbor" as long as "email, materials etc… must not contain words or statements that someone could misinterpret as practice development."

77. As Hall's email makes clear, however, CSI viewed these activities as exactly that: practice development for physicians who would use CSI PAD devices. Wilhelmy, CSI's Regional Sales Manager, reiterated this point, praising one CSI sales representative for hosting "Multiple Referral Marketing Dinner events EXECTED to drive new business in the Vegas area."

78. This referral-based marketing was a thinly disguised kickback to physicians who would use CSI devices in return for these referrals, and it worked exactly as CSI intended.

**E.     CSI OFFERS SUBSTANTIAL ASSISTANCE TO PHYSICIANS WHO WANT TO OPEN OUTPATIENT LABS AND WHO RETURN THE FAVOR BY USING CSI PAD DEVICES.**

79. CSI has funneled kickbacks though National Cardiovascular Partners which joins with and assists physicians and hospitals to open and manage office-based cardiac cath labs.

80. OBLs allow physicians to capture more of the income and profits from the procedures they perform, but they require substantial start-up and management costs that busy physicians ordinarily might not undertake. NCP assists with both the substantial start-up costs – often exceeding $1 million in each new OBLs – and the ongoing operations by assisting in office management.

19

81.    As discussed above, CSI funnels physicians to NCP and then, to reward CSI, NCP encourages its OBLs to use CSI PAD devices.

82.    CSI offers kickbacks to physicians opening OBLs through substantially more favorable contracting terms.  Whereas normally CSI demands upfront payment for its PAD devices and does not accept returns of expired or unused product, CSI offers physicians opening OBLs the following more favorable terms:

      a.      Consignment of products, so that the physician does not incur the substantial upfront costs, and

      b.      Return or replacement of expired products.

83.    These more favorable contract terms operate as inducements and kickbacks to physicians at NCP's OBLs for their frequent usage of CSI PAD devices.

84.    NCP's OBLs allow CSI to increase utilization of CSI PAD devices through their corporate relationship.

**F.    CSI OFFERS SHAM SPEAKER PAYMENTS TO FREQUENT-USERS OF CSI PAD DEVICES AND TO OTHER TARGETED PHYSICIANS.**

85.    CSI uses a Speakers Bureau to reward physicians who frequently use CSI's PAD devices.

86.    The Speakers Bureau is a tool to increase volume share with the speaking physician by paying physicians to be speakers and to increase their usage of CSI PAD devices.

87.    Physicians selected for the Speakers Bureau are paid $1250 per talk (which last less than an hour), plus an additional hourly rate of $250 per hour for preparation and follow-up.

88.    CSI sales representatives are instructed to select for the Speakers Bureau only physicians who will guide others through multiple procedures using CSI PAD devices – and thereby increasing the sales of those devices.  Likewise, CSI would punish, by denying to them these lucrative speaking fees, physicians who did not agree to drive such usage.

20

89.     CSI's sham Speakers Bureau funnels kickbacks to high-users and others whom CSI sought to cultivate.

## VII.   CSI AGGRESSIVELY OFF-LABEL MARKETED ITS PAD MEDICAL DEVICES TO INCREASE REVENUE.

90.     CSI's OLM scheme was designed to and did influence doctors and other medical personnel to use CSI's medical devices for procedures that are not medically necessary or reasonable and necessary.

91.     CSI's OLM strategy was intended to and did induce physicians to use and obtain reimbursement for use of CSI medical devices on patients covered by Medicare, Medicaid, and other government payors.

### A.     PROMOTION FOR USE WITH A SMALLER CATHETER – 4-FRENCH – WHEN THE APPROVAL WAS LIMITED TO THE LARGER 6-FRENCH CATHETER ENABLES OFF-LABEL USE IN FAR MORE BLOOD VESSELS.

92.     Catheters are thin tubes that attach to medical devices and one end of the catheter is inserted into the body.  The French Catheter Scale is a common sizing convention for catheters: the smaller the number, the smaller the dimension of the catheter tube.

93.     CSI's PAD devices are approved and indicated for use with a catheter sized 6-French.

94.     A 6-French measures 2 mm in diameter, and because of its relatively larger size, cannot fit in many of smaller blood vessels.



95.     CSI knew that this sizing restriction would limit the areas of the body in which physicians could use its PAD devices. But, instead of demonstrating safety and efficacy with a smaller catheter and gaining FDA approval, CSI instead just decided to market its devices off-label for use with the smaller size 4-French catheters. As CSI Regional Sales Manager Frank Natale told his sales representatives, "Our Value Story" includes, "[a]lthough off label, 1.25 and 1.5 crowns can fit through a 5F system. 1.25 micros can go 4F pedal/tibial access."

96.     Size 4-French catheters measure only 1.33 mm in diameter, meaning that the approved size 6-French catheters are 50% larger than the size 4-French catheters that CSI was marketing as appropriate for use with its PAD devices.

97.     At CSI's Med Ed physician trainings, CSI taught physicians to operate its PAD devices using a Pedal Stick with a 4-French catheter, and CSI's sales representatives engaged in that same off-label promotion.

98.     As discussed above, a key component of CSI's scheme to drive sales was to encourage physicians to use its PAD devices in more and more vessels, even vessels that did not appear to contain calcium blockages or plaque. By marketing its PAD devices as being appropriate to use with the smaller 4-French catheter, CSI was able to greatly expand the universe of blood vessels in which physicians used its PAD devices, often for procedures that were not medically necessary.

**B.      PROMOTION FOR USE IN AREAS OF THE BODY (E.G., CORONARIES AND THE ARMS) AND DISEASE STATES (E.G., CHRONIC TOTAL OCCLUSIONS) FOR WHICH THE DEVICES LACKED FDA-APPROVAL.**

99.     CSI's PAD devices are indicated only to treat blood vessels below the waist; i.e., in the legs and feet. CSI ignored this limited indication and instead marketed its products for far broader uses.

100.    For example, CSI actively promoted its PAD devices for use in Severely Calcified Coronary Lesions and Coronary Atherectomy.  Coronary arteries and veins are those vessels that connect directly to the heart and are located in the chest, not below the waist.

101.    CSI promoted spinning its PAD devices in coronaries even if there was no evidence of obstructions based on the theory that spinning causes no harm and there might be undetectable calcium in those vessels.  Such use was off-label and generally not medically necessary.

102.    CSI encouraged physicians to uses its PAD devices in coronaries and showed physicians and office staff how to bill and gain reimbursement from government funded health care programs for such procedures and which ICD-9 codes to use for such billing.

103.    CSI was even so brazen as to prominently display this coding information on its website.  CSI's website concedes that CSI "does not have a device that currently indicated for coronary use," yet still shows physicians how to code for procedures on coronaries.  A screen shot of CSI's website follows:

## Procedure Coding

These codes will help track severely calcified coronary lesions and coronary atherectomy*:

Procedure Code (NEW):

○ 17.55 Transluminal Coronary Atherectomy, Directional Atherectomy, Excimer Laser Atherectomy, Rotational Atherectomy, that by laser, that by percutaneous approach, that by transluminal extraction

Diagnosis Code (NEW):

○ 414.4 Coronary Atherosclerosis due to calcified coronary lesion; coronary atherosclerosis due to severely calcified coronary lesion, code first coronary atherosclerosis (414.00-414.07)

Inpatient Hospital Procedure Code (REVISED):

○ 00.66 is modified to describe PTCA only instead of PTCA or coronary atherectomy

Help track the cost of calcification:

1. Share these codes with your hospital coder
2. Encourage documentation of "severely calcified lesions" and "atherectomy" in patient records

**Cardiovascular Systems, Inc. does not have a device that is currently indicated for coronary use.**

104. Despite CSI's contention that no harm could come from physicians using its PAD devices in patients other than those indicated in the devices' approvals, CSI's PAD devices are not risk-free and have the potential to cause serious injury.

105. For example, the speeds at which CSI's PAD devices should be spun in coronaries are slower than they are in other vessels. Spinning too fast in coronaries can cause spasms that can cause arteries and vessels to shut down, necessitating at least the administration of vasodilators, if not more serious complications.

106. CSI also off-label promoted its PAD devices for use to treat Chronic Total Occlusions ("CTOs"), which are complete blockages of an artery.

107. CTOs are a serious condition and most physicians prefer to perform a bypass on such vessels. Bypass has the best long-term data supporting efficacy.

108. CSI has a promotional agreement with Asahi Intecc for use of their Periphery Guide Wires. These guide wires are not approved to treat CTOs and can cause patient harm.

109. Nonetheless, CSI encouraged physicians to use the unapproved Asahi guide wires and to "Force" their way through the occlusion or blockage.

110. This technique is very dangerous and can result in perforated arteries.

111. Additionally, CSI Regional Sales Manager Natale told his sales representatives to market that CSI's PAD devices are the "[m]ost deliverable atherectomy device commercially available – Micro Crown gets us EVERYWHERE. . . . Brachial Access/Femoral Access/Pedal/Tibial Access/Retrograde/Antegrade – We can do it all." And he encouraged them to stress to physicians that "[r]eimbursement rocks."

## VIII. CSI'S HIPAA VIOLATIONS SHOW ITS GENERAL DISREGARD FOR THE LAW

112.     HIPAA protects patients from having "protected health information" (ranging from identifying information through the medical history and records) shared outside a limited group of people (most typically the treating doctors and other medical professionals in the course of treatment) without express patient permission.  *See* 45 C.F.R. §§ 160.103, 164.502.

113.     Notwithstanding this law and associated regulations, CSI regularly used images from patients to market its PAD devices without ever seeking or obtaining those patients' permission to take, use, or distribute such images or protected health information.  Although CSI did not use patients' names, this does not cure CSI violation of these patients' privacy concerning their sensitive health information.

## COUNT I
### (Violation of False Claims Act, 31 U.S.C. § 3729(a)(1))

114.     Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

115.     Defendant knowingly presented and caused to be presented to the United States of America false or fraudulent claims for payment for the procedures performed using its medical devices, in violation of 31 U.S.C. § 3729(a)(1).

116.     As a result of Defendant's actions as set forth above in this Complaint, the United States of America has been, and may continue to be, severely damaged.

## COUNT II
### (Violation of False Claims Act, 31 U.S.C. § 3729(a)(2))

117.     Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

25

118. Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to the payment of a false or fraudulent claims, thereby causing false or fraudulent claims for payment to actually be paid or approved, in violation of 31 U.S.C. § 3729(a)(2).

119. The United States of America, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid and may still be paying or reimbursing for the procedures performed using Defendant's medical devices.

120. As a result of Defendant's actions as set forth above in this Complaint, the United States of America has been, and may continue to be, severely damaged.

## COUNT III
### (Violation of False Claims Act, 31 U.S.C. § 3729(a)(3))

121. Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

122. As detailed above, Defendant knowingly conspired with the various healthcare professionals to commit acts in violation of 31 U.S.C. §§ 3729(a)(1) & (a)(2). Defendant and these healthcare professionals committed overt acts in furtherance of the conspiracy as described above.

123. As a result of Defendant's actions as set forth above, the United States of America has been, and may continue to be, severely damaged.

## COUNT IV
### (Violation Of False Claims Act, 31 U.S.C. § 3729(A)(7))

124. Relator incorporates herein by reference the preceding paragraphs of this Amended Complaint as though fully set forth herein.

125.    As alleged in detail above, CSI knowingly avoided or decreased its obligations to pay or transmit money to the Government. Specifically: (1) CSI made, used, or caused to made or used, a record or statement to conceal, avoid, or decrease an obligation to the United States; (2) the records or statements were in fact false; and (3) it knew that the records or statements were false.

126.    As a result of Defendant's actions as set forth above, the United States of America has been, and may continue to be, severely damaged.

## COUNT V
### (Violation of California False Claims Act)

127.    Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

128.    This is a civil action brought by Relator on behalf of the State of California against Defendant under the California False Claims Act, CAL. CODE § 12652(c).

129.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented, or caused to be presented to, and may still be presenting or causing to be presented to, an officer or employee of the State of California or its political subdivisions false or fraudulent claims for payment, in violation of CAL. CODE § 12651(a)(1).

130.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid in violation of CAL. CODE § 12651(a)(2).

131.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of California or its political subdivisions in violation of CAL. CODE § 1265 1 (a)(7).

132.     The State of California, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay for Procedures performed using CSI's medical devices for recipients of state and state subdivision funded health insurance programs.

133.     As a result of Defendant's actions as set forth above, the State of California, including its political subdivisions, has been, and may continue to be, severely damaged.

## COUNT VI
## (Violation of Colorado False Claims Act)

134.     Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

135.     This is a civil action brought by Relator on behalf of the State of Colorado against Defendant under the Colorado False Claims Act, COLO. REV. STAT. § 25.5-4-304.

136.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented, or caused to be presented to, and may still be presenting or causing to be presented to, an officer or employee of the State of Colorado or its political subdivisions false or fraudulent claims for payment, in violation of COLO. REV. STAT. § 25.5-4-305(a).

137.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid in violation of COLO. REV. STAT. § 25.5-4-305(b).

138.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Colorado or its political subdivisions in violation of COLO. REV. STAT. § 25.5-4-305(f).

139.    The State of Colorado, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay for Procedures performed using CSI's medical devices for recipients of state- and state-subdivision-funded health insurance programs.

140.    As a result of Defendant's actions as set forth above, the State of Colorado, including its political subdivisions, has been, and may continue to be, severely damaged.

## COUNT VII
### (Violation of Connecticut False Claims Act)

141.    Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

142.    This is a civil action brought by Relator on behalf of the State of Connecticut against Defendant under the Connecticut False Claims Act, 2009 Conn. Pub. Acts No. 09-5.

29

143. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented, or caused to be presented to, and may still be presenting or causing to be presented to, an officer or employee of the State of Connecticut or its political subdivisions false or fraudulent claims for payment, in violation of 2009 Conn. Pub. Acts No. 09-5 § 2(a)(1).

144. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid in violation of Conn. Pub. Acts No. 09-5 § 2(a)(2).

145. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Connecticut or its political subdivisions in violation of Conn. Pub. Acts No. 09-5 § 2(a)(1).

146. The State of Connecticut, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay for Procedures performed using CSI's medical devices for recipients of state and state subdivision funded health insurance programs.

147. As a result of Defendant's actions as set forth above, the State of Connecticut, including its political subdivisions, has been, and may continue to be, severely damaged.

## COUNT VIII
## (Violation of Delaware False Claims and Report Act)

148. Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

149. This is a civil action brought by Relator on behalf of the Government of the State of Delaware against Defendant under the State of Delaware's False Claims and Reporting Act, DEL. CODE ANN. tit. 6, § 1203(b).

150. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, directly or indirectly, to an officer or employee of the Government of the State of Delaware false or fraudulent claims for payment or approval, in violation of DEL. CODE ANN. tit. 6, §1201 (a)( 1 ).

151. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, directly or indirectly, false records or statements to get false or fraudulent claims paid or approved, in violation of DEL. CODE ANN. tit. 6, §1201(a)(2).

152. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, increase or decrease an obligation to pay or transmit money to the Government of Delaware, in violation of DEL. CODE ANN. tit. 6, § 120l(a)(7).

31

153.     The Government of the State of Delaware, unaware of the falsity of the claims

and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or

statements, paid, and may continue to pay for Procedures performed using CSI's medical devices

for recipients of healthcare programs funded by the Government of the State of Delaware.

154.     As a result of Defendant's actions, the Government of the State of Delaware has

been, and may continue to be, severely damaged.

### COUNT IX
### (Violation of District of Columbia False Claims Act)

155.     Relator incorporates herein by reference the preceding paragraphs of the

Complaint as though fully set forth herein.

156.     This is a civil action brought by Relator in the name of the District of Columbia

against Defendant under the District of Columbia False Claims Act, D.C. CODE ANN. § 2-

308.15(a).

157.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

presented, or caused to be presented, and may still be presenting or causing to be presented, to an

officer or employee of the District, a false or fraudulent claim for payment or approval, in

violation of D.C. CODE ANN. § 2-308.14(a)(l).

158.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

used or caused to be used, and may continue to use or cause to be used, false records and/or

statements to get false claims paid or approved by the District, in violation of D.C. CODE ANN.

§ 2-308.14(a)(2).

159.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made or used, or caused to be made or used, and may still be making or using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the District, in violation of D.C. CODE ANN. § 2-308.14(a)(7).

160.     The District of Columbia, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay for Procedures performed using CSI's medical devices for recipients of health insurance programs funded by the District.

161.     As a result of Defendant's actions, as set forth above, the District of Columbia has been, and continues to be, severely damaged.

## COUNT X
### (Violation of Florida False Claims Act)

162.     Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

163.     This is a civil action brought by Relator on behalf of the State of Florida against Defendant under the State of Florida's False Claims Act, FLA. STAT. ANN. § 68.083(2).

164.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to officers or employees of the State of Florida or one of its agencies false or fraudulent claims for payment or approval, in violation of FLA. STAT. ANN. § 68.082(2)(a).

165.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Florida or one of its agencies, in violation of FLA. STAT. ANN. § 68.082(2)(b).

166.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Florida or one of its agencies, in violation of FLA. STAT. ANN. § 68.082 (2)(g).

167.    The State of Florida and its agencies, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay for Procedures performed using CSI's medical devices for recipients of health insurance plans funded by the State of Florida or its agencies.

168.    As a result of Defendant's actions, as set forth above, the State of Florida and/or its agencies have been, and may continue to be, severely damaged.

## COUNT XI
### (Violation of Georgia Medicaid False Claims Act)

169.    Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

170.    This is a civil action brought by Relator, in the name of the State of Georgia, against Defendant pursuant to the State of Georgia Medicaid Fraud False Claims Act, GA. CODE ANN. § 49-4-168 (2007), *et seq.*

171.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or misrepresentation of material fact on an application for any benefit or payment under the Georgia Medicaid program, in violation of GA. CODE ANN. § 49-4-168 (2007).

172.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or representation of material fact for use in determining rights to a benefit or payment, in violation of GA. CODE ANN. § 49-4-168 (2007).

173.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally concealed or failed to disclose, and may still be concealing or failing to disclose, an event with an intent to fraudulently secure the benefit or payment either in a greater amount or quantity than is due or when no benefit or payment is authorized, in violation of GA. CODE ANN. § 49-4-168 (2007).

174.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly offered or paid, and may still be offering or paying, remuneration, directly or indirectly, overtly or covertly, in cash or in kind, in return for purchasing, ordering or arranging for, or recommending purchasing or ordering of, a good, supply or service for which payment was made, in whole or in part, under the Medicaid program, in violation of GA. CODE ANN. § 49-4-168 (2007).

175.     The State of Georgia or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims

and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of Medicaid.

176.     As a result of Defendant's actions, as set forth above, the State of Georgia or its political subdivisions has been, and may continue to be, severely damaged.

**COUNT XII**
**(Violation of Hawaii False Claims Act)**

177.     Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

178.     This is a civil action brought by Relator on behalf of the State of Hawaii and its political subdivisions against Defendant under the State of Hawaii's False Claims Act -False Claims to the State, HAW. REV. STAT. § 661-25.

179.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to officers or employees of the State of Hawaii, or its political subdivisions, false or fraudulent claims for payment or approval, in violation of HAW. REV. STAT. § 61-21(a)(l).

180.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made and used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Hawaii, or its political subdivisions, in violation of HAW. REV. STAT. § 661-21(a)(2).

181.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made

36

or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Hawaii, or its political subdivisions, in violation of HAW. REV. STAT. § 661-21(a)(7).

182.     The State of Hawaii, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay for Procedures performed using CSI's medical devices for recipients of state-funded health insurance programs.

183.     As a result of Defendant's actions as set forth above, the State of Hawaii and/or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT XIII
### (Violation of Illinois Whistleblower Reward and Protection Act)

184.     Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

185.     This is a civil action brought by Relator on behalf of the State of Illinois against Defendant under the State of Illinois Whistleblower Reward and Protection Act, 740 ILL, COMP. STAT. ANN. 175/4(b).

186.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the State of Illinois or a member of the Illinois National Guard a false or fraudulent claim for payment or approval, in violation of 740 ILL. COMP. STAT. ANN. 175/3(a)(I).

187.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

Case 3:13-cv-00404-MOC-DSC   Document 1   Filed 07/15/13   Page 42 of 82

made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Illinois, in violation of 740 ILL. COMP. STAT. ANN. 175/3(a)(2).

188.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to conceal, avoid or decrease an obligation to pay or transmit money to the State of Illinois, in violation of 740 ILL. COMP. STAT. ANN. 175/3(a)(7).

189.    The State of Illinois, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of those claims and/or statements, paid, and may continue to pay for Procedures performed using CSI's medical devices for recipients of state-funded health insurance programs.

190.    As a result of Defendant's actions, as set forth above, the State of Illinois has been, and may continue to be, severely damaged.

## COUNT XIV
### Violation of Indiana False Claims and Whistleblower Protection Act)

191.    Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

192.    This is a civil action brought by Relator on behalf of the State of Indiana against Defendant under the State of Indiana False Claims and Whistleblower Protection Act, IND. CODE ANN. § 5-11-5.5-4(a).

193.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally presented, or caused to be presented, and may still be presenting or causing to be

38

presented, a false claim for payment or approval, in violation of IND. CODE ANN. § 5-11-5.5-2(b)(l).

194.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, a false record or statement to obtain payment or approval of false claims by the State of Indiana, in violation of IND. CODE ANN. § 5-11-5.5-2(b)(2).

195.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to avoid an obligation to pay or transmit money to the State of Indiana, in violation of IND. CODE ANN. § 5-11-5.5-2(b)(6).

196.    The State of Indiana, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of those claims and/or statements, paid, and may continue to pay for Procedures performed using CSI's medical devices for recipients of state-funded health insurance programs.

197.    As a result of Defendant's actions, as set forth above, the State of Indiana has been, and may continue to be, severely damaged.

## COUNT XV
### (Violation of Louisiana Medical Assistance Programs Integrity Law)

198.    Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

199.     This is a civil action brought by Relator, on behalf of the State of Louisiana's medical assistance programs against Defendant under the State of Louisiana Medical Assistance Programs Integrity Law, LA. REV. STAT. § 46:439.1.

200.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, and may still be presenting or causing to be presented, false or fraudulent claims, in violation of LA. REV. STAT. § 46:438.3(A).

201.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly engaged in misrepresentation, and may still be engaging in misrepresentation, to obtain, or attempt to obtain, payment from medical assistance programs funds, in violation of LA. REV. STAT. § 46:438.3(B).

202.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly submitted, and may continue to submit, claims for goods, services or supplies which were medically unnecessary or which were of substandard quality or quantity, in violation of LA. REV. STAT, § 46:438.3(D).

203.     The State of Louisiana, its medical assistance programs, political subdivisions and/or the Department, unaware of the falsity of the claims and/or statements made by Defendant, or its actions as set forth above, acted in reliance, and may continue to act in reliance, on the accuracy of Defendant's claims and/or statements in paying for Procedures performed using CSI's medical devices for medical assistance program recipients.

204.    As a result of Defendant's actions, the State of Louisiana, its medical assistance programs, political subdivisions and/or the Department have been, and may continue to be, severely damaged.

**COUNT XVI**
**(Violation of Maryland False Health Claims Act)**

205.    Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

206.    This is a civil action brought by Relator on behalf of the State of Maryland against Defendant under the Maryland False Health Claims Act of 2010, M.D. CODE ANN. ch. 4, § 2-601.

207.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented a false claim for payment or approval, in violation of M.D. CODE ANN. ch. 4, § 2-602(a)(1).

208.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used false records or statements to obtain payment or approval of claims by the State of Maryland or its political subdivisions in violation of M.D. CODE ANN. ch. 4, § 2-602(a)(2).

209.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Maryland or one of its political subdivisions, in violation of M.D. CODE ANN. ch. 4, § 2-602(a)(8).

41

210. The State of Maryland, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

211. As a result of Defendant's actions, as set forth above, the State of Maryland or its political subdivisions have been severely damaged.

## COUNT XVII
### (Violation of Massachusetts False Claims Act)

212. Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

213. This is a civil action brought by Relator on behalf of the Commonwealth of Massachusetts against Defendant under the Massachusetts False Claims Act, MASS. LAWS ANN. ch. 12, § 5C(2).

214. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of MASS. LAWS ANN, ch. 12, § 5B(1).

215. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to obtain payment or approval of claims by the Commonwealth of Massachusetts or its political subdivisions in violation of MASS. LAWS ANN. ch. 12, § 5B(2).

216.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the Commonwealth of Massachusetts or one of its political subdivisions, in violation of MASS. LAWS ANN. ch. 12, § 5B(8).

217.     The Commonwealth of Massachusetts, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of health insurance programs funded by the state or its political subdivisions.

218.     As a result of Defendant's actions, as set forth above, the Commonwealth of Massachusetts or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT XVIII
## (Violation of Michigan Medicaid False Claims Act)

219.     Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

220.     This is a civil action brought by Relator in the name of the State of Michigan against Defendant under the State of Michigan Medicaid False Claims Act, MICH. COMP. LAWS SERV. § 400.610a(l).

221.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made or caused to be made, and may still be making or causing to be made, a false statement or

false representation of a material fact in an application for Medicaid benefits, in violation of MICH. COMP. LAWS. SERV. § 400.603(1).

222.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made or cause to be made a false statement or false representation of a material fact for use in determining rights to a Medicaid benefit, in violation of MICH. COMP. LAWS. SERV. § 400.603(2).

223.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly concealed or failed to disclose, and may still be concealing or failing to disclose, an event affecting their initial or continued right to receive a Medicaid benefit or the initial or continued right of any other person on whose behalf Defendant have applied for or are receiving a benefit with intent to obtain a benefit to which Defendant are not entitled or in an amount greater than that to which Defendant are entitled, in violation of MICH. COMP. LAWS. SERV. § 400.603(3).

224.    Defendant, in possession of facts under which they are aware or should be aware of the nature of its conduct and that its conduct is substantially certain to cause the payment of a Medicaid benefit, knowingly presented or made or caused to be presented or made, and may still be presenting or causing to be presented a false claim under the social welfare act, Act No. 280 of the Public Acts of 1939, as amended, in violation of MICH. COMP. LAWS. SERV. § 400.607(1).

225.    The State of Michigan, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims

and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of Medicaid.

226. As a result of Defendant's actions, as set forth above, the State of Michigan or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT XIX
## (Violation of Minnesota Medicaid False Claims Act)

227. Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

228. This is a civil action brought by Relator in the name of the State of Minnesota against Defendant under the State of Minnesota Medicaid False Claims Act, Minn. Stat. § 15C.01.

229. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made or caused to be made, and may still be making or causing to be made, a false statement or false representation of a material fact in an application for Medicaid benefits, in violation of Minn. Stat. § 15C.02(a)(1).

230. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made or cause to be made a false statement or false representation of a material fact for use in determining rights to a Medicaid benefit, in violation of Minn. Stat. § 15C.02(a)(2).

231. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly concealed or failed to disclose, and may still be concealing or failing to disclose, an event affecting its initial or continued right to receive a Medicaid benefit or the initial or continued

45

right of any other person on whose behalf Defendant have applied for or are receiving a benefit with intent to obtain a benefit to which Defendant are not entitled or in an amount greater than that to which Defendant are entitled, in violation of Minn. Stat. § 15C.02(a)(2).

232.     Defendant, in possession of facts under which they are aware or should be aware of the nature of their conduct and that their conduct is substantially certain to cause the payment of a Medicaid benefit, knowingly presented or made or caused to be presented or made, and may still be presenting or causing to be presented a false claim under the social welfare act, Act No. 280 of the Public Acts of 1939, as amended, in violation of Minn. Stat. § 15C.02(a)(7).

233.     The State of Minnesota, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay for Procedures performed using CSI's medical devices for recipients of Medicaid.

234.     As a result of Defendant's actions, as set forth above, the State of Minnesota or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT XX
## (Violation of Montana False Claims Act)

235.     Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

236.     This is a civil action brought by Relator on behalf of the State of Montana against Defendant under the State of Montana False Claims Act, MONT. CODE ANN. § 17-8-406(1).

237.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of MONT. CODE ANN. § 17-8-403(l)(a).

238.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get a false claim paid or approved, in violation of MONT. CODE ANN. § 17-8-403(1)(b).

239.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Montana or one of its political subdivisions, in violation of MONT. CODE ANN. § 17-8-403(l)(g).

240.     The State of Montana, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of health insurance programs funded by the state or its political subdivisions.

241.     As a result of Defendant's actions, as set forth above, the State of Montana or its political subdivisions have been, and may continue to be, severely damaged.

**COUNT XXI**
**(Violation of Nevada Submission of False Claims to State or Local Government Act)**

242.     Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

47

243. This is a civil action brought by Relator on behalf of the State of Nevada against Defendant under the State of Nevada Submission of False Claims to State or Local Government Act, NEV. REV. STAT. ANN. § 357.080(1)

244. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of NEV. REV. STAT. ANN. § 357.040( l)(a).

245. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to obtain payment or approval for false claims in violation of NEV. REV. STAT. ANN. § 357.040(1)(b).

246. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Nevada or one of its political subdivisions, in violation of NEV. REV. STAT. ANN. § 357.040(1)(g).

247. The State of Nevada, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of health insurance programs funded by the state or its political subdivisions.

248.     As a result of Defendant's actions, as set forth above, the State of Nevada or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT XXII
## (Violation of New Hampshire Medicaid False Claims Act)

249.     Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

250.     This is a civil action brought by Relator on behalf of the State of New Hampshire against Defendant under the State of New Hampshire Medicaid False Claims Act, N.H. REV. STAT. ANN. § 167:61-cII.(a).

251.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of N.H. REV. STAT. ANN. § 167:61-bI.(a).

252.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get a fake claim paid or approved, in violation of N.H. REV. STAT. ANN. § 167:61-bI.(b).

253.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New Hampshire or one of its political subdivisions, in violation of N.H. REV. STAT. ANN. § 167:61-bI.(e).

254. The State of New Hampshire, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of health insurance programs funded by the state or its political subdivisions.

255. As a result of Defendant's actions, the State of New Hampshire or its political subdivisions have been, and may continue to be, severely damaged.

### COUNT XXIII
### (Violation of New Jersey False Claims Act)

256. Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

257. This is a civil action brought by Relator, in the name of the State of New Jersey, against Defendant pursuant to the State of New Jersey Fraud False Claims Act, N.J. STAT. ANN. § 265 (2007), *et seq.*

258. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or misrepresentation of material fact on an application for any benefit or payment under the New Jersey Medicaid program, in violation of N.J. STAT. ANN. § 265 (2007).

259. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or representation of material fact for use in determining rights to a benefit or payment, in violation of N.J. STAT. ANN. § 265 (2007).

260. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally concealed or failed to disclose, and may still be concealing or failing to disclose, an event with an intent fraudulently to secure the benefit or payment either in a greater amount or quantity than is due or when no benefit or payment is authorized, in violation of N.J. STAT. ANN. § 265 (2007).

261. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly offered or paid, and may still be offering or paying, remuneration, directly or indirectly, overtly or covertly, in cash or in kind, in return for purchasing, ordering or arranging for, or recommending purchasing or ordering of, a good, supply or service for which payment was made, in whole or in part, under the Medicaid program, in violation of N.J. STAT. ANN. § 265 (2007).

262. The State of New Jersey or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of Medicaid.

263. As a result of Defendant's actions, as set forth above, the State of New Jersey or its political subdivisions has been, and may continue to be, severely damaged.

### COUNT XXIV
### (Violation of New Mexico Medicaid False Claims Act)

264. Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

265.     This is a civil action brought by Relator on behalf of the State of New Mexico against Defendant under the State of New Mexico Medicaid False Claims Act, N.M. STAT. ANN. § 27-14-7(B).

266.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false or fraudulent claim for payment under the Medicaid program, in violation of N.M. STAT. ANN. § 27-14-4A.

267.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, and may be continuing to present or causing to be presented a claim for payment under the Medicaid program that is not authorized or is not eligible for benefit under the Medicaid program, in violation of N.M. STAT. ANN. § 27-14-4B.

268.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get a false or fraudulent claim paid or approved, in violation of N.M. STAT. ANN. § 27-14-4C.

269.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit

money to the State of New Mexico or one of its political subdivisions, in violation of N.M. STAT. ANN. § 27-14-4E.

270.     The State of New Mexico, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of health insurance programs funded by the state or its political subdivisions.

271.     As a result of Defendant's actions, as set forth above, the State of New Mexico or its political subdivisions have been, and may continue to be, severely damaged.

### COUNT XXV
### (Violation of New York False Claims Act)

272.     Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

273.     This is a civil action brought by Relator on behalf of the State of New York against Defendant under the State of New York False Claims Act, N.Y. CLS St. Fin. § 190.2.

274.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of N.Y. CLS St. Fin. § 189(a).

275.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get a false claim paid or approved, in violation of N.Y. CLS St. Fin. § 189(b).

53

276.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New York or one of its political subdivisions, in violation of N.Y.CLS St. Fin. § 189(g).

277.    The State of New York, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of health insurance programs funded by the state or its political subdivisions.

278.    As a result of Defendant's actions, as set forth above, the State of New York or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT XXVI
## (Violation of North Carolina False Claims Act)

279.    Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

280.    This is a civil action brought by Relator on behalf of the State of North Carolina against Defendant under the North Carolina False Claims Act, N.C. GEN. STAT. § 1-605.

281.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of N.C. GEN. STAT. § 1-607(a)(1).

54

282. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to obtain payment or approval of claims by the State of North Carolina or its political subdivisions in violation of N.C. GEN. STAT. § 1-607(a)(2).

283. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of North Carolina or one of its political subdivisions, in violation of N.C. GEN. STAT. § 1-607(a)(7).

284. The State of North Carolina, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of health insurance programs funded by the state or its political subdivisions.

285. As a result of Defendant's actions, as set forth above, the State of North Carolina or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT XXVII
### (Violation of Oklahoma Medicaid False Claims Act)

286. Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

287. This is a civil action brought by Relator, in the name of the State of Oklahoma, against Defendant pursuant to the State of Oklahoma Medicaid Fraud False Claims Act, OKLA. STAT. tit. 63, § 5053 (2007), *et seq.*

288. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or misrepresentation of material fact on an application for any benefit or payment under the Oklahoma Medicaid program, in violation of OKLA. STAT. tit. 63, § 5053 (2007).

289. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or representation of material fact for use in determining rights to a benefit or payment, in violation of OKLA. STAT. tit. 63, § 5053 (2007).

290. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally concealed or failed to disclose, and may still be concealing or failing to disclose, an event with an intent fraudulently to secure the benefit or payment either in a greater amount or quantity than is due or when no benefit or payment is authorized, in violation of OKLA. STAT. tit. 63, § 5053 (2007).

291. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly offered or paid, and may still be offering or paying, remuneration, directly or indirectly, overtly or covertly, in cash or in kind, in return for purchasing, ordering or arranging for, or

recommending purchasing or ordering of, a good, supply or service for which payment was made, in whole or in part, under the Medicaid program, in violation of OKLA. STAT. tit. 63, § 5053 (2007).

292. The State of Oklahoma or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of Medicaid.

293. As a result of Defendant's actions, as set forth above, the State of Oklahoma or its political subdivisions has been, and may continue to be, severely damaged.

## COUNT XXVIII
### (Violation of Rhode Island False Claims Act)

294. Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

295. This is a civil action brought by Relator, in the name of the State of Rhode Island, against Defendant pursuant to the State of Rhode Island Fraud False Claims Act, R.I. GEN. LAWS § 9-1.1-1 (2008), *et seq.*

296. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or misrepresentation of material fact on an application for any benefit or payment under the Rhode Island Medicaid program, in violation of R.I. GEN. LAWS § 9-1.1-1 (2008).

297. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a

false statement or representation of material fact for use in determining rights to a benefit or payment, in violation of R.I. GEN. LAWS § 9-1.1-1 (2008).

298. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally concealed or failed to disclose, and may still be concealing or failing to disclose, an event with an intent fraudulently to secure the benefit or payment either in a greater amount or quantity than is due or when no benefit or payment is authorized, in violation of R.I. GEN. LAWS § 9-1.1-1 (2008).

299. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly offered or paid, and may still be offering or paying, remuneration, directly or indirectly, overtly or covertly, in cash or in kind, in return for purchasing, ordering or arranging for, or recommending purchasing or ordering of, a good, supply or service for which payment was made, in whole or in part, under the Medicaid program, in violation of R.I. GEN. LAWS § 9-1.1-1 (2008).

300. The State of Rhode Island or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of Medicaid.

301. As a result of Defendant's actions, as set forth above, the State of Rhode Island or its political subdivisions has been, and may continue to be, severely damaged.

## COUNT XXIX
## (Violation of Tennessee Medicaid False Claims Act)

302.     Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

303.     This is a civil action brought by Relator in the name of the State of Tennessee against Defendant under the Tennessee Medicaid False Claims Act, TENN. CODE ANN. § 71-5-183(a).

304.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to the State of Tennessee a claim for payment under the Medicaid program knowing it was false or fraudulent, in violation of TENN. CODE ANN. § 71-5-182(a)(l)(A).

305.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, records or statements to get false or fraudulent claims under the Medicaid program paid for or approved by the State of Tennessee with knowledge that such records or statements were false, in violation of TENN. CODE ANN. § 71-5-182(a)(l)(B).

306.     Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, records or statements to conceal, avoid or decrease an obligation to pay or transmit money to the State of Tennessee, relative to the Medicaid program, with knowledge that such records or statements were false, in violation of TENN. CODE ANN. § 71-5-182(a)(1)(D).

307. The State of Tennessee, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of the Medicaid program.

308. As a result of Defendant's actions, as set forth above, the State of Tennessee has been, and may continue to be, severely damaged.

**COUNT XXX**
**(Violation of Texas Human Resources Code,**
**Medicaid Fraud Prevention Chapter)**

309. Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

310. This is a civil action brought by Relator in the name of the State of Texas against Defendant under the State of Texas Human Resources Code, Medicaid Fraud Prevention Chapter, TEX. HUM. RES. CODE § 36.101(a).

311. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or misrepresentation of material fact on an application for a contract, benefit or payment under a Medicaid program, in violation of TEX. HUM. RES. CODE § 36.002(1).

312. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or misrepresentation of material fact that is intended to be used, and has been used, to determine a person's eligibility for a benefit or payment under the Medicaid program, in violation of TEX. HUM. RES. CODE § 36.002(2).

60

313.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, caused to be made, induced or sought to induce, and may still be making, causing to be made, inducing or seeking to induce, the making of a false statement or misrepresentation of material fact concerning information required to be provided by a federal or state law, rule, regulation or provider agreement pertaining to the Medicaid program in violation of TEX. HUM. RES. CODE § 36.002(4)(B).

314.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made a claim under the Medicaid program for a service or product that was inappropriate, in violation of TEX. HUM. RES. CODE § 36.002(7)(C),

315.    The State of Texas, its political subdivisions or the Department, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of Medicaid.

316.    As a result of Defendant's actions, as set forth above, the State of Texas, its political subdivisions or the Department has been, and may continue to be, severely damaged.

## COUNT XXXI
### (Violation of Virginia Fraud Against Taxpayers Act)

317.    Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

318.    This is a civil action brought by Relator on behalf of the Commonwealth of Virginia against Defendant under the Commonwealth of Virginia Fraud Against Taxpayers Act, VA. CODE ANN. § 8.01-216.5, *et seq.*

61

319.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the Commonwealth, a false or fraudulent claim for payment or approval, in violation of VA. CODE ANN. § 8.01-216.3(A)(l).

320.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Commonwealth, in violation of VA. CODE ANN. § 8.01-216.3(A)(2).

321.    Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the Commonwealth, in violation of VA. CODE ANN. § 8.01-216.3(A)(7).

322.    The Commonwealth of Virginia, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of state funded health insurance programs.

323.    As a result of Defendant's actions, as set forth above, the Commonwealth of Virginia, its political subdivisions or the Department has been, and may continue to be, severely damaged.

## COUNT XXXII
## (Violation of Wisconsin False Claims for Medical Assistance Act)

324. Relator incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

325. This is a civil action brought by Relator on behalf of the State of Wisconsin against Defendant under the State of Wisconsin False Claims for Medical Assistance, WIS. STAT. § 20.931 (2007), *et seq.*;

326. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to any officer, or employee, or agent of the state, a false or fraudulent claim for medical assistance, in violation of WIS. STAT. § 20.931(2)(a) (2007).

327. Defendant, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, a false record or statement to obtain approval or payment of a false claim for medical assistance, in violation of WIS. STAT. § 20.931(2)(b).

328. The State of Wisconsin, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for Procedures performed using CSI's medical devices for recipients of state-funded health insurance programs.

329. As a result of Defendant's actions, as set forth above, the State of Wisconsin, its political subdivisions or the Department has been, and may continue to be, severely damaged.

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendant as follows:

A.     That Defendant be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, et seq., CAL. CODE § 12650, et seq., COLO. REV. STAT § 25.5-4-304, et seq., 2009 CONN. PUB. ACTS NO. 09-5, et seq., DEL. CODE ANN. tit. 6, § 1201, et seq., D.C. CODE ANN. § 2-308.13, et seq., FLA. STAT. ANN. § 68.081, et seq., GA. CODE ANN. § 49-4-168, et seq., HAW. REV. STAT. § 661-21, et seq., 740 ILL. COMP. STAT. ANN. § 1751, et seq., IND. CODE ANN. § 5-11-5.5, et seq., LA. REV. STAT. § 437.1, et seq., M.D. CODE ANN. Ch. 4, § 2-601, *et seq.*, MASS. LAWS ANN. Ch. 12, §5A, et seq., MICH. COMP. LAWS SERV. § 400.601, et seq., MINN. STAT. § 15C.01, et seq., MONT. CODE ANN. § 17-8-401, et seq., NEV. REV. STAT. ANN. § 357.010, et seq., N.H. REV. STAT. ANN. § 167:61-b, et seq., N.J. STAT ANN. § 265, et seq., N.M. STAT. ANN. § 27-14-1, et seq., N.Y. CLS ST. FIN. § 187, et seq., N.C. GEN. STAT. § 1-605, et. seq., OKLA. STAT. tit. 63, § 5053, et seq., R.I. GEN. LAWS § 9-1,1-1, et seq., TENN. CODE ANN. § 71-5-181, et seq., TEX. HUM. RES. CODE § 36.001, et seq., VA. CODE ANN. § 8.01-216.1, et seq., and WIS. STAT. § 20.931 (2007), et seq.

B.     That judgment be entered in Relator's favor and against Defendant in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than five thousand five hundred dollars ($5,500) or more than eleven thousand dollars ($11,000) per claim as provided by 31 U.S.C. § 3729(a), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

C.    That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. §

3730(d) and CAL. CODE § 12650, et seq., COLO. REV. STAT § 25.5-4-304, et seq., 2009

CONN. PUB. ACTS NO. 09-5 § 5 (e), DEL. CODE ANN. tit. 6, § 1201, et seq., D.C. CODE

ANN. § 2-308.13, et seq., FLA. STAT. ANN. § 68.081, et seq., GA. CODE ANN. § 49-4-168, et

seq., HAW. REV. STAT. § 661-21, et seq., 740 ILL. COMP. STAT. ANN. § 1751, et seq., IND.

CODE ANN. § 5-11-5.5, et seq., LA. REV. STAT. § 437.1, et seq., M.D. CODE ANN. Ch. 4, §

2-605, MASS. LAWS ANN. Ch. 12, §5A, et seq., MICH. COMP. LAWS SERV. § 400.601, et

seq., MINN. STAT. § 15C.01, et seq., MONT. CODE ANN. § 17-8-401, et seq., NEV. REV.

STAT. ANN. § 357.010, et seq., N.H. REV. STAT. ANN. § 167:61-b, et seq., N.J. STAT ANN.

§ 265, et seq., N.M. STAT. ANN. § 27-14-1, et seq., N.Y. CLS ST. FIN. § 187, et seq., N.C.

GEN. STAT. § 1-605, et. seq., OKLA. STAT. tit. 63, § 5053, et seq., R.I. GEN. LAWS § 9-1,1-

1, et seq., TENN. CODE ANN. § 71-5-181, et seq., TEX. HUM. RES. CODE § 36.001, et seq.,

VA. CODE ANN. § 8.01-216.1, et seq., and WIS. STAT. § 20.931 (2007), et seq.

D.    That judgment be entered in Relator's favor and against Defendant in the amount

of the damages sustained by the State of California or its political subdivisions multiplied as

provided for in CAL. CODE § 12651(a), plus a civil penalty of no more than ten thousand

dollars ($10,000) per claim as provided by CAL. CODE § 12651(a), to the extent such multiplied

penalties shall fairly compensate the State of California or its political subdivisions for losses

resulting from the Scheme undertaken by Defendant, together with penalties for specific claims

to be identified at trial after full discovery;

E.    That judgment be entered in Relator's favor and against Defendant in the amount

of the damages sustained by the State of Colorado or its political subdivisions multiplied as

provided for in COLO. REV. STAT. § 25.5-4-305, plus a civil penalty of not less than five

thousand dollars ($5,000) or more than ten thousand dollars ($10,000) for each act as provided by COLO. REV. STAT. § 25.5-4-30), to the extent such multiplied penalties shall fairly compensate the State of Colorado or its political subdivisions for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

F.      That judgment be entered in Relator's favor and against Defendant in the amount of the damages sustained by the Government of the State of Connecticut multiplied as provided for in 2009 Conn. Pub. Acts No. 09-5 § 2(b), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) for each act in violation of the State of Connecticut False Claims Act, as provided by Conn. Pub. Acts No. 09-5 § 2(b), to the extent such multiplied penalties shall fairly compensate the Government of the State of Connecticut for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

G.      That judgment be entered in Relator's favor and against Defendant in the amount of the damages sustained by the Government of the State of Delaware multiplied as provided for in DEL. CODE ANN. tit. 6, §1201(a), plus a civil penalty of not less than five thousand five-hundred dollars ($5,500) or more than eleven thousand dollars ($11,000) for each act in violation of the State of Delaware False Claims and Reporting Act, as provided by DEL. CODE ANN. tit. 6, § 1201(a), to the extent such multiplied penalties shall fairly compensate the Government of the State of Delaware for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

H.      That judgment be entered in Relator's favor and against Defendant in the amount of the damages sustained by the District of Columbia, multiplied as provided for in D.C. CODE

ANN. § 2-308.14(a), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) for each false claim, and the costs of this civil action brought to recover such penalty and damages, as provided by D.C. CODE ANN. § 2-308.14(a), to the extent such multiplied penalties shall fairly compensate the District of Columbia for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

       I.      That judgment be entered in Relator's favor and against Defendant in the amount of the damages sustained by the State of Florida or its agencies multiplied as provided for in FLA. STAT. ANN. § 68.082, plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) as provided by FLA. STAT. ANN. § 68.082, to the extent such multiplied penalties shall fairly compensate the State of Florida or its agencies for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

       J.      That judgment be entered in Relator's favor and against Defendant in the amount of the damages sustained by the State of Georgia or its political subdivisions multiplied as provided for in GA. CODE ANN. § 49-4-168, plus a civil penalty of not less than fifteen (15) percent or more than twenty-five (25) percent of the proceeds per claim as provided by GA. CODE ANN. § 49-4-168.2, to the extent such multiplied penalties shall fairly compensate the State of Georgia or its political subdivisions for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

       K.      That judgment be entered in Relator's favor and against Defendant in the amount of the damages sustained by the State of Hawaii, multiplied as provided for in HAW. REV. STAT. § 661-21(a), plus a civil penalty of not less than five thousand dollars ($5,000) or more

than ten thousand dollars ($10,000) as provided by HAW. REV. STAT. § 661-21(a), to the extent such multiplied penalties shall fairly compensate the State of Hawaii for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

L.      That judgment be entered in Relator's favor and against Defendant in the amount of the damages sustained by the State of Illinois, multiplied as provided for in 740 ILL. COMP. STAT, ANN. 175/3(a), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000), and the costs of this civil action brought to recover such damages and penalty, as provided by 740 ILL. COMP. STAT. ANN. 175/3(a), to the extent such multiplied penalties shall fairly compensate the State of Illinois for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

M.      That judgment be entered in Relator's favor and against Defendant in the amount of the damages sustained by the State of Indiana, multiplied as provided for in IND. CODE ANN. § 5-11-5.5-2, plus a civil penalty of at least five thousand dollars ($5,000) as provided by IND. CODE ANN. § 5-11-5.5-2, to the extent such multiplied penalties shall fairly compensate the State of Indiana for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

N.      That judgment be entered in Relator's favor and against Defendant in the amount of the damages sustained by Louisiana's medical assistance programs, multiplied as provided for in LA. REV. STAT § 438.6(B)(2), plus a civil penalty of no more than ten thousand dollars ($10,000) per violation or an amount equal to three times the value of the illegal remuneration, whichever is greater, as provided for by LA. REV. STAT § 438.6(B)(I), plus up to ten thousand

dollars ($10,000) for each false or fraudulent claim, misrepresentation, illegal remuneration, or other prohibited act, as provided by LA. REV. STAT § 438.6(C)(l)(a), plus payment of interest on the amount of the civil fines imposed pursuant to Subsection B of § 438.6 at the maximum legal rate provided by La. Civil Code Art. 2924 from the date the damage occurred to the date of repayment, as provided by LA. REV. STAT. § 438.6(C)(l)(b), to the extent such multiplied fines and penalties shall fairly compensate the State of Louisiana's medical assistance programs for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

      O.     That judgment be entered in Relator's favor and against Defendant for restitution to the State of Maryland or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendant's unlawful acts, as provided for in M.D. CODE ANN. Ch. 4, § 2-602(b), multiplied as provided for in M.D. CODE ANN. Ch. 4, § 2-602(b)(1)(ii), plus a civil penalty of not more than ten thousand dollars ($10,000) for each false claim, pursuant to M.D. CODE ANN. Ch. 4, § 2-602(b)(1)(i), to the extent such multiplied penalties shall fairly compensate the State of Maryland or its political subdivisions for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

      P.     That judgment be entered in Relator's favor and against Defendant for restitution to the Commonwealth of Massachusetts or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendant's unlawful acts, as provided for in MASS. LAWS ANN. ch. 12, 5B, multiplied as provided for in MASS. LAWS ANN. ch. 12, § 5B, plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) for each false claim, pursuant to MASS. LAWS ANN, ch. 12, 5B, to the extent

such multiplied penalties shall fairly compensate the Commonwealth of Massachusetts or its political subdivisions for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

Q.      That judgment be entered in Relator's favor and against Defendant for restitution to the State of Michigan or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendant's unlawful acts, as provided for in MICH. COMP. LAWS SERV. §§ 400.603-400.606, 400.610b, in order to fairly compensate the State of Michigan or its political subdivisions for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

R.      That judgment be entered in Relator's favor and against Defendant for restitution to the State of Minnesota or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendant's unlawful acts, as provided for in MINN. STAT. § 15C.02(a), multiplied as provided for in MINN. STAT. § 15C.02(a), plus a civil penalty of not less than five thousand five- hundred dollars ($5,500) or more than eleven thousand dollars ($11,000) for each act, pursuant to MINN. STAT. § 15C.02(a), to the extent such multiplied penalties shall fairly compensate the State of Minnesota or its political subdivisions for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

S.      That judgment be entered in Relator's favor and against Defendant for restitution to the State of Montana or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendant's unlawful acts, as provided for in MONT. CODE ANN. § 17-8-403(2), multiplied as provided for in MONT. CODE ANN. § 17-8-

403(2), plus a civil penalty of up to ten thousand dollars ($10,000) for each false claim, pursuant to MONT. CODE ANN. § 17-8-403(2), to the extent such multiplied penalties shall fairly compensate the State of Montana or its political subdivisions for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

      T.     That judgment be entered in Relator's favor and against Defendant for restitution to the State of Nevada for the value of payments or benefits provided, directly or indirectly, as a result of Defendant's unlawful acts, as provided for in NEV. REV. STAT. ANN. 357.040, multiplied as provided for in NEV. REV. STAT. ANN. § 357.040(1), plus a civil penalty of not less than two thousand dollars ($2,000) or more than ten thousand dollars ($10,000) for each act, pursuant to NEV. REV. STAT. ANN. § 357.040, to the extent such multiplied penalties shall fairly compensate the State of Nevada for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

      U.     That judgment be entered in Relator's favor and against Defendant for restitution to the State of New Hampshire or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendant's unlawful acts, as provided for in N.H. REV. STAT. ANN. § 167:6111, multiplied as provided for in N.H. REV. STAT. ANN. § 167:61II, plus a civil penalty of two thousand dollars ($2,000) for each false claim, pursuant to REV. STAT. ANN. § 167:61II, to the extent such multiplied penalties shall fairly compensate the State of New Hampshire or its political subdivisions for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

V.      That judgment be entered in Relator's favor and against Defendant in the amount

of the damages sustained by the State of New Jersey or its political subdivisions multiplied as

provided for in N.J. STAT. ANN. § 265, plus a civil penalty of not less than fifteen (15) percent

or more than twenty-five (25) percent per claim as provided by N.J. STAT. ANN. § 265, to the

extent such multiplied penalties shall fairly compensate the State of New Jersey or its political

subdivisions for losses resulting from the Scheme undertaken by Defendant, together with

penalties for specific claims to be identified at trial after full discovery;

W.      That judgment be entered in Relator's favor and against Defendant for restitution

to the State of New Mexico or its political subdivisions for the value of payments or benefits

provided, directly or indirectly, as a result of Defendant's unlawful acts, as provided for in N.M.

STAT. ANN. § 27-14-4, multiplied as provided for in N.M. STAT. ANN. § 27-14-4, to the

extent such multiplied penalties shall fairly compensate the State of New Mexico or its political

subdivisions for losses resulting from the Scheme undertaken by Defendant, together with

penalties for specific claims to be identified at trial after fill discovery;

X.      That judgment be entered in Relator's favor and against Defendant for restitution

to the State of New York or its political subdivisions for the value of payments or benefits

provided, directly or indirectly, as a result of Defendant's unlawful acts, as provided for in N.Y.

CLS St. Fin. § 189.1., multiplied as provided for in N.Y. CLS St. Fin. § 189.1., plus a civil

penalty of not less than six thousand dollars ($6,000) or more than twelve thousand dollars

($12,000) for each false claim, pursuant to N.Y. CLS St. Fin. § 189.l., to the extent such

multiplied penalties shall fairly compensate the State of New York or its political subdivisions

for losses resulting from the Scheme undertaken by Defendant, together with penalties for

specific claims to be identified at trial after full discovery;

Y.     That judgment be entered in Relator's favor and against Defendant for restitution

to the State of North Carolina for the value of payments or benefits provided, directly or

indirectly, as a result of Defendant's unlawful acts, as provided for in N.C. GEN. STAT. § 1-

605, multiplied as provided for in N.C. GEN. STAT. § 1-607(a), plus a civil penalty of not less

than five thousand five hundred dollars ($5,500) or more than eleven thousand dollars ($11,000)

as provided by N.C. GEN. STAT. § 1-607(a), to the extent such multiplied penalties shall fairly

compensate the State of North Carolina for losses resulting from the Scheme undertaken by

Defendant, together with penalties for specific claims to be identified at trial after full discovery;

Z.     That judgment be entered in Relator's favor and against Defendant in the amount

of the damages sustained by the State of Oklahoma or its political subdivisions multiplied as

provided for in OKLA. STAT. tit. 63, § 5053, plus a civil penalty of not less than fifteen (15)

percent or more than twenty-five (25) percent per claim as provided by OKLA. STAT. tit. 63, §

5053.4, to the extent such multiplied penalties shall fairly compensate the State of Oklahoma or

its political subdivisions for losses resulting from the Scheme undertaken by Defendant, together

with penalties for specific claims to be identified at trial after full discovery;

AA.     That judgment be entered in Relator's favor and against Defendant in the amount

of the damages sustained by the State of Rhode Island or its political subdivisions multiplied as

provided for in R.I. GEN. LAWS § 9-1,1-1, plus a civil penalty of not less than fifteen (15)

percent or more than twenty-five (25) percent per claim as provided by R.I. GEN. LAWS § 9-

1,1-4, to the extent such multiplied penalties shall fairly compensate the State of Rhode Island or

its political subdivisions for losses resulting from the Scheme undertaken by Defendant, together

with penalties for specific claims to be identified at trial after full discovery;

73

BB.     That judgment be entered in Relator's favor and against Defendant for restitution to the State of Tennessee for the value of payments or benefits provided, directly or indirectly, as a result of Defendant's unlawful acts, as provided for in TENN. CODE ANN. § 71-5-182, multiplied as provided for in TENN. CODE ANN. § 71-5-182(a)(l), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) pursuant to TENN. CODE ANN. § 71-5-182(a)(l), to the extent such multiplied penalties shall fairly compensate the State of Tennessee for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

CC.     That judgment be entered in Relator's favor and against Defendant for restitution to the State of Texas for the value of payments or benefits provided, directly or indirectly, as a result of Defendant's unlawful acts, as provided for in TEX. HUM. RES. CODE § 36.052(a)(l), multiplied as provided for in TEX. HUM. RES. CODE § 36.052(a)(4), the interest on the value of such payments or benefits at the prejudgment interest rate in effect on the day the payment or benefit was paid or received, for the period from the date the payment or benefit was paid or received to the date that restitution is made to the State of Texas, pursuant to TEX. HUM. RES. CODE § 36.052(a)(2), plus a civil penalty of not less than five thousand dollars ($5,000) or more than fifteen thousand dollars ($15,000) for each unlawful act committed that resulted in injury to an elderly or disabled person, and of not less than one thousand dollars ($1,000) or more than ten thousand dollars ($10,000) for each unlawful act committed that did not result in injury to an elderly or disabled person, pursuant to TEX. HUM. RES. CODE § 36.052(a)(3)(A) and (B), to the extent such multiplied penalties shall fairly compensate the State of Texas for losses resulting from the Scheme undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

74

DD.     That judgment be entered in Relator's favor and against Defendant in the amount

of the damages sustained by the Commonwealth of Virginia, multiplied as provided for in VA.

CODE ANN. § 8.01-216.3(A), plus a civil penalty of not less than five thousand dollars ($5,000)

or more than ten thousand dollars ($10,000) as provided by VA. CODE ANN. § 8.01-216.3(A),

to the extent such multiplied penalties shall fairly compensate the Commonwealth of Virginia for

losses resulting from the Scheme undertaken by Defendant, together with penalties for specific

claims to be identified at trial after full discovery;

EE.     That judgment be entered in Relator's favor and against Defendant in the amount

of the damages sustained by the State of Wisconsin or its political subdivisions multiplied as

provided for in WIS. STAT. § 20.931(2), plus a civil penalty of not less than five thousand

dollars ($5,000) or more than ten thousand dollars ($10,000) as provided by WIS. STAT.

§ 20.931(2), to the extent such multiplied penalties shall fairly compensate the State of

Wisconsin or its political subdivisions for losses resulting from the Scheme undertaken by

Defendant, together with penalties for specific claims to be identified at trial after full discovery;

FF.     That Defendant be ordered to disgorge all sums by which they have been enriched

unjustly by its wrongful conduct; and

GG.     That judgment be granted for Relator against Defendant for all costs, including,

but not limited to, court costs, reasonable expenses, expert fees and all attorneys' fees incurred by

Relator in the prosecution of this suit; and

HH.     That Relator be granted such other and further relief as the Court deems just and

proper.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(a), plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: July 15, 2013

Respectfully submitted,

Clark C. Walton
N.C. State Bar No. 34275
Alexander Ricks PLLC
2901 Coltsgate Road, Suite 202
Charlotte, North Carolina 28211
Tel: (704) 200-2637
Fax: (704) 365-3676
clark@alexanderricks.com

John Radice
*Pro Hac Vice Application Pending*
Radice Law Firm, P.C.
34 Sunset Blvd
Long Beach, NJ 08008
Tel: (646) 245-8502
Fax: (609) 385-0745
jradice@radicelawfirm.com

*Counsel for Relator Travis Thams*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing **COMPLAINT** upon each of the government plaintiffs in this lawsuit by depositing a copy of same in the United States mail, postage prepaid, in envelopes addressed as follows:

> The Honorable Eric Holder
> Attorney General of the United States
> c/o U.S. Department of Justice
> Civil Division
> 950 Pennsylvania Avenue, N.W.
> Washington, DC 20530-0001
>
> United States Attorney Anne M. Tompkins
> c/o Jonathan H. Ferry
> Assistant U.S. Attorney, Civil Division
> U.S. Attorney's Office, WDNC
> 227 West Trade Street, Suite 1650
> Charlotte, N.C. 28202

This 15th day of July, 2013.

Clark C. Walton
N.C. State Bar No. 34275

Alexander Ricks, PLLC
2901 Coltsgate Road, Suite 202
Charlotte, North Carolina 28211
(704) 200-2637 direct
(704) 365-3676 fax
(704) 787-0197 mobile
clark@alexanderricks.com

77