**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
BLAIR A. NICHOLAS (Bar No. 178428)
blairn@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

    -and-

GERALD H. SILK
jerry@blbglaw.com
AVI JOSEFSON
avi@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Counsel for Proposed Lead Plaintiff the City of Miami Fire Fighters' & Police Officers' Retirement Trust and Proposed Lead Counsel for the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| CAROLINE PARADIS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CARDIOVASCULAR SYSTEMS, INC., DAVID L. MARTIN, and LAURENCE L. BETTERLEY, <br><br> Defendants. | Case No.: 2:16-cv-01011-DSF-RAO <br><br> <u>CLASS ACTION</u> <br><br> **NOTICE OF MOTION AND MOTION OF THE CITY OF MIAMI FIRE FIGHTERS' & POLICE OFFICERS' RETIREMENT TRUST FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: May 16, 2016 <br> Time: 1:30 p.m. <br> Dept.: 840 <br> Judge: Hon. Dale S. Fischer <br> ORAL ARGUMENT REQUESTED |

MOTION OF MIAMI FIPO FOR APPT. AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL
Date and Time: May 16, 2016 at 1:30 p.m.
Judge: Hon. Dale S. Fischer

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... ii

NOTICE OF MOTION AND MOTION ..................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................3

I. PRELIMINARY STATEMENT ...................................................................3

II. STATEMENT OF FACTS ............................................................................4

III. ARGUMENT .................................................................................................6

    A. Miami FIPO Should Be Appointed Lead Plaintiff ...............................................................................................7

        1. Miami FIPO Has The Largest Financial Interest In The Relief Sought By The Class ..................................................7

        2. Miami FIPO Satisfies The Requirements Of Rule 23 ................................................................7

    B. The Court Should Approve Miami FIPO's Selection Of Lead Counsel ................................................................10

IV. CONCLUSION............................................................................................11

---

MOTION OF MIAMI FIPO FOR APPT. AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL
Date and Time: May 16, 2016 at 1:30 p.m.
Judge: Hon. Dale S. Fischer     i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Cavanaugh*,
　306 F.3d 726 (9th Cir. 2002) ..............................................................................10

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
　2013 WL 2368059 (N.D. Cal. May 29, 2013).....................................................10

*Frias v. Dendreon Corp.*,
　835 F. Supp. 2d 1067 (W.D. Wash. 2011) ...........................................................8

*Shreves v. Xunlei Ltd.*,
　2015 WL 5446935 (C.D. Cal. Sept. 15, 2015) ..................................................7, 8

*Tanne v. Autobytel, Inc.*,
　226 F.R.D. 659 (C.D. Cal. 2005)..........................................................................8

**STATUTES, RULES & REGULATIONS**

15 U.S.C. § 78j(b) .....................................................................................................3

15 U.S.C. § 78t(a) .....................................................................................................3

15 U.S.C. § 78u-4..............................................................................................passim

17 C.F.R. § 240.10b-5...............................................................................................3

Federal Rules of Civil Procedure Rule 23 ......................................................1, 3, 7, 8

**SECONDARY AUTHORITIES**

H.R. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730 (1995)...........9

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 16, 2016 at 1:30 p.m., before the Honorable Dale S. Fischer, at the United States District Court for the Central District of California, located at the United States Courthouse, 255 East Temple Street, Courtroom 840, Los Angeles, California 90012-3332, the City of Miami Fire Fighters' & Police Officers' Retirement Trust ("Miami FIPO") will respectfully move this Court for entry of an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): (1) appointing Miami FIPO as Lead Plaintiff in the above-captioned action; (2) approving Miami FIPO's selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") to serve as Lead Counsel for the Class; and (3) for any such further relief as the Court may deem just and proper.[1]

This Motion is made on the grounds that Miami FIPO believes it is the "most adequate plaintiff" under the PSLRA and should therefore be appointed Lead Plaintiff. Specifically, Miami FIPO believes that it has the "largest financial interest" in the relief sought by the Class in this action by virtue of, among other things, the approximately $269,000 in losses that Miami FIPO suffered on its investments in the securities of Cardiovascular Systems, Inc. ("Cardiovascular Systems" or the "Company"). Miami FIPO also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical

---

[1] Pursuant to Local Rule 7-3, counsel for Miami FIPO states that it was not able to meet and confer with counsel for the opposing movants prior to filing the instant motion. The statutory framework of the PSLRA requires all motions seeking Lead Plaintiff appointment to be filed within 60 days of the publication of the notice of pendency of the action. No such motions were filed meaningfully in advance of Miami FIPO's motion, and it was not possible to confer with counsel for the other movants to determine whether the instant motion would be opposed or to attempt to resolve the issues raised by the motion.

of other Class members' claims and because it will fairly and adequately represent the interests of the Class.

Miami FIPO respectfully requests oral argument.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Blair A. Nicholas filed herewith (the "Nicholas Decl."), the pleadings and other filings herein, and such other written or oral argument as may be permitted by the Court.

WHEREFORE, Miami FIPO respectfully requests that the Court: (1) appoint Miami FIPO as Lead Plaintiff in the above-captioned action pursuant to the PSLRA; (2) approve Miami FIPO's selection of Bernstein Litowitz to serve as Lead Counsel for the Class; and (3) grant such further relief as the Court may deem just and proper.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

The above-captioned securities class action alleges that Cardiovascular Systems and certain of its senior officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).[2]  Specifically, during the time period from September 12, 2011 through January 21, 2016, (the "Class Period"), Defendants misrepresented and concealed that Cardiovascular Systems relied upon illegal kickbacks, off-label promotions, and other violations of applicable laws and regulations in order to boost sales of its medical devices.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  For the reasons set forth below, Miami FIPO is the "most adequate plaintiff" by virtue of, among other things, the approximately $269,000 in losses it incurred on its investments in Cardiovascular Systems stock during the Class Period.  Miami FIPO also satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure because its claims are typical of all members of the Class, and it will fairly and adequately represent the Class.

---

[2] In addition to the above-captioned action, another related securities class action is pending against Cardiovascular Systems in the District of Minnesota.  *See Shoemaker v. Cardiovascular Systems, Inc.*, No. 16-cv-00568-DWF-TNL (D. Minn. filed Mar. 4, 2016) ("*Shoemaker*").  Miami FIPO is filing a concurrent motion seeking appointment as Lead Plaintiff in *Shoemaker*.

MOTION OF MIAMI FIPO FOR APPT. AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL
Date and Time: May 16, 2016 at 1:30 p.m.
Judge: Hon. Dale S. Fischer                                                                 3

Indeed, Miami FIPO is a paradigmatic Lead Plaintiff under the PSLRA because it is a sophisticated institutional investor with a real financial interest in the litigation, and has experience serving as Lead Plaintiff in complex securities class actions under the PSLRA and supervising the work of outside counsel. Accordingly, Miami FIPO has both the incentive and ability to supervise and monitor counsel. Further, Miami FIPO has selected Bernstein Litowitz, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class. Accordingly, Miami FIPO respectfully requests that the Court appoint it Lead Plaintiff and otherwise grant its motion.

## II. STATEMENT OF FACTS

Cardiovascular Systems is a medical device company headquartered in St. Paul, Minnesota that develops and manufactures medical devices for the treatment of peripheral and coronary arterial diseases. The Company operates in a highly-regulated environment which governs the allowable uses of its medical devices, and prohibits the use of kickbacks and bribes to medical professionals to drive sales of such devices. For instance, the Federal Food, Drug, and Cosmetic Act forbids companies from marketing medical devices in the U.S. without the approval of the U.S. Food and Drug Administration ("FDA") for their intended use. Further, the Federal Anti-Kickback Statute prohibits the payment and receipt of kickbacks in return for procuring a medical device to be paid by a federal healthcare program.

Throughout the Class Period, Cardiovascular Systems falsely touted the Company's Code of Ethics and compliance with the law, and that the Company had a policy not to offer or accept kickbacks, bribes, or gifts of substantial value. Cardiovascular Systems also represented that its sales reps may not make payments to customers or provide meals, travel expenses, entertainment, gifts, or other benefits in exchange for the customer's business. Contrary to these representations, Defendants knew or recklessly disregarded that the Company was engaged in the illegal and improper off-label marketing of its medical devices. Defendants also

knew or recklessly disregarded that Cardiovascular Systems engaged in an illegal kickback scheme to promote its medical devices to healthcare professionals.

On July 15, 2013, a former Cardiovascular Systems sales manager initiated an action in the United States District Court for the Western District of North Carolina pursuant to the qui tam provisions of the Federal Civil False Claims Act and the qui tam provisions of twenty-seven States and the District of Columbia. *See United States ex rel. Thams v. Cardiovascular Systems, Inc.*, No. 13-cv-00404-MOC-DSC (W.D.N.C. filed July 15, 2013) (the "Qui Tam Action"). The complaint was filed under seal and was not made public until July 8, 2015. According to the Qui Tam Action, since at least as early as 2010, the Company has been engaged in an illegal kickback and off-label marketing scheme. The kickbacks included free, all-expense-paid training programs followed by explicit demands by Cardiovascular Systems' employees that attendees use the Company's products on future patients; giving free product to induce the purchase of other product; using referral channel marketing, through which Cardiovascular Systems would reward physicians who used or purchased the Company's devices by referring patients to those physicians; and giving sham Speaker Bureau payments for high prescribers, among other things.

With regard to Cardiovascular Systems' off-label marketing, the Qui Tam Action asserts that the Company promoted its devices for use with a smaller sized catheter than approved and promoted its devices for use in areas of the body and disease states for which the devices lacked FDA-approval.

Investors began to learn the truth regarding the Company's misconduct on May 9, 2014. On that day, the Company disclosed that it had received a letter from the U.S. Attorney's Office for the Western District of North Carolina stating that it is investigating the Company to determine whether the Company has violated the False Claims Act, resulting in the submission of false claims to federal and state health care programs, including Medicare and Medicaid. On this news, the price of

the Company's stock dropped $1.62 per share, or nearly 6%, from a close of $29.05 per share on May 9, 2014, to close at $27.43 per share on May 12, 2014.

On October 7, 2015, Cardiovascular Systems announced disappointing revenue of $43.9 million for its fiscal first quarter of 2016. The disappointing results were due to sales force issues, which materialized because of Cardiovascular Systems' receipt of the letter from the U.S. Attorney's Office regarding its sales force. This news caused the price of the Company's stock to drop $3.01 per share, or approximately 18%, from $16.63 per share on October 7, 2015 to a close of $13.62 per share on October 8, 2015.

Then, on January 21, 2016, the Company disclosed that it expects revenue from its fiscal second quarter of 2016 to be just $41.4 million. The Company again attributed the guidance miss to the continued effects of the sales force transition, which materialized because of the Company's receipt of the letter from the U.S. Attorney's Office. On this news, the price of Company's shares declined $3.72 per share, or nearly 30%, from a close of $12.46 per share on January 21, 2016, to close at $8.74 per share on January 22, 2016.

### III.    ARGUMENT

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On February 12, 2016, plaintiff Caroline Paradis filed the instant action against Defendants. *See* ECF No. 1. On the same day, counsel for Ms. Paradis published a notice on *Business Wire*, which alerted investors to the pendency of the action and set the deadline for investors to seek Lead Plaintiff status by April 12, 2016. *See* Nicholas Decl., Ex. A. On March 4, 2016, plaintiff Sandra K. Shoemaker filed a related securities class action against Defendants in the District of Minnesota. *See Shoemaker v. Cardiovascular Systems, Inc.*, No. 16-cv-00568-DWF-TNL (D. Minn. filed Mar. 4, 2016). Also on March 4, counsel for Ms. Shoemaker published

notice of the pendency of the action to investors on *Dow Jones News Service*, and referred investors to the April 12 Lead Plaintiff deadline. *See* Nicholas Decl. Ex. B. Accordingly, Miami FIPO satisfies the PSLRA 60-day requirement through the filing of this motion.

### A. Miami FIPO Should Be Appointed Lead Plaintiff

Miami FIPO respectfully submits that it should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B). When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B); *see also Shreves v. Xunlei Ltd.*, No. CV1504299MWFASX, 2015 WL 5446935, at *2 (C.D. Cal. Sept. 15, 2015).

#### 1. Miami FIPO Has The Largest Financial Interest In The Relief Sought By The Class

Miami FIPO should be appointed Lead Plaintiff because it believes that it has the largest financial interest in the relief sought by the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). As demonstrated herein, Miami FIPO sustained total losses of approximately $269,000 on its purchases of 36,000 shares of Cardiovascular Systems stock. *See* Nicholas Decl., Exs. C-D. To the best of Miami FIPO's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation. Accordingly, Miami FIPO believes that it has the largest financial interest of any qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

#### 2. Miami FIPO Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, Miami FIPO otherwise satisfies the requirements of Rule 23 of the

Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, the movant need only make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements. *See Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 666 (C.D. Cal. 2005) ("A wide ranging analysis is not appropriate" to determine whether the movant "has made a prima facie showing that he satisfies the requirements of Rule 23, and should be left for consideration on a motion for class certification"). Here, Miami FIPO unquestionably satisfies both requirements.

Miami FIPO's claims are typical of the claims of other purchasers of Cardiovascular Systems securities. Typicality is satisfied when "the applicant's claims arise from the same event or course of conduct which gave rise to the claims of the class members, and are founded on the same legal theory." *See Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1075 (W.D. Wash. 2011). Here, Miami FIPO's and each class member's claims arise from the same events and are founded on the same legal theory. Like all other Class members, Miami FIPO: (1) purchased Cardiovascular Systems securities during the Class Period; (2) at prices artificially inflated by Defendants' false and misleading statements; and (3) was damaged thereby. *See id.* As such, Miami FIPO is a typical Class representative. *Id.*

Miami FIPO likewise satisfies the adequacy requirement of Rule 23. Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interests of the class." In order for the Class' interests to be fairly and adequately represented, a Lead Plaintiff must demonstrate that it is willing to vigorously represent the class' claims, that its interests are aligned with those of other class members, and that its chosen counsel is qualified. *Shreves*, 2015 WL 5446935, at *3. As demonstrated by the Certification submitted herewith, Miami FIPO is a sophisticated institutional investor that understands and accepts the duties and responsibilities owed to other Class members to monitor and vigorously prosecute the action in the best interests of the Class. *See* Nicholas

Decl., Ex. C.  Further, Miami FIPO's interests are perfectly aligned with those of the other Class members and are not antagonistic in any way.  There are no facts to suggest any actual or potential conflict of interest or other antagonism between Miami FIPO and other Class members.  Miami FIPO has a highly significant financial interest in the outcome of this litigation, which ensures that Miami FIPO will vigorously litigate this matter in the best interests of the Class.

In fact, Miami FIPO is the very sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—a sophisticated institutional investor with a substantial financial interest in the litigation.  *See* H.R. Rep. No. 104-369, at *34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").  Significantly, Miami FIPO successfully served as Lead Plaintiff in a securities class action subject to the PSLRA (represented by Bernstein Litowitz as Lead Counsel) and recovered approximately $20 million for the class. *See In Re: Penn West Petroleum Ltd. Securities Litigation*, No. 14-cv-06046-JGK (S.D.N.Y.) (settlement pending final court approval).  Accordingly, Miami FIPO is well aware of the Lead Plaintiff's obligations under the PSLRA to oversee and supervise the litigation separate and apart from counsel and is more than adequate to represent the Class' interests here.

Finally, Miami FIPO has demonstrated its adequacy through its selection of Bernstein Litowitz as Lead Counsel to represent the Class.  As discussed more fully below, Bernstein Litowitz is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.

## B. The Court Should Approve Miami FIPO's Selection Of Lead Counsel

The Court should approve Miami FIPO's selection of Bernstein Litowitz as Lead Counsel on behalf of the Class. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), a movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent, and the Court should not disturb Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, No. 12-CV-06039-LHK, 2013 WL 2368059, at *4 (N.D. Cal. May 29, 2013) ("The decision of lead counsel belongs to the lead plaintiff") (citing *In re Cavanaugh*, 306 F.3d 726, 734 n.14 (9th Cir. 2002).

Bernstein Litowitz is among the preeminent securities class action law firms in the country. *See* Bernstein Litowitz's Firm Biography, Nicholas Decl., Exhibit E. Bernstein Litowitz served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-03288-DLC (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the Class. Recently, Bernstein Litowitz secured a resolution of $2.43 billion in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058-PKC (S.D.N.Y.), and a $730 million settlement in *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522-SHS (S.D.N.Y.) on behalf of the Class.

Bernstein Litowitz also served as Co-Lead Counsel in *In re McKesson HBOC, Inc. Securities Litigation*, No. 99-cv-20743-RMW (N.D. Cal.), in which Bernstein Litowitz helped obtain a $960 million recovery from the issuer defendant—the single largest settlement of any securities class action within the courts of the Ninth Circuit—as well as $72 million from the defendant auditor and $10 million from an investment banking defendant. In addition, Bernstein Litowitz obtained a plaintiffs' verdict following a four-week trial in *In re Clarent*

*Corporation Securities Litigation*, No. 01-cv-3361-CRB (N.D. Cal.), the second verdict in favor of investors since the 1995 passage of the PSLRA.  Other significant examples in which courts in this District, including this Court, have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include:  *In re New Century Securities Litigation*, No. 07-cv-00931-DDP-FMO (C.D. Cal.) (recovering $125 million for investors); *In re Toyota Motor Corporation Securities Litigation*, No. 10-cv-922-DSF-AJWx (C.D. Cal.) (recovering $25.5 million for investors) (Fischer, J.); and *In re International Rectifier Corp. Securities Litigation*, No. 07-cv-2544-JFW-VBK (C.D. Cal.) (recovering $90 million for investors).  Accordingly, the Court should approve Miami FIPO's selection of Bernstein Litowitz as Lead Counsel for the Class.

## IV. CONCLUSION

For the reasons discussed above, Miami FIPO respectfully requests that the Court: (1) appoint it to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (2) approve its selection of Bernstein Litowitz as Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

Dated:  April 12, 2016            Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP

 */s/ Blair A. Nicholas*
BLAIR A. NICHOLAS

Blair A. Nicholas (Bar No. 178428)
blairn@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323
    -and-
GERALD H. SILK
jerry@blbglaw.com
AVI JOSEFSON

avi@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Counsel for Proposed Lead Plaintiff the City of Miami Fire Fighters' & Police Officers' Retirement Trust and Proposed Lead Counsel for the Class*