1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ROSMAN & GERMAIN LLP**
DANIEL L. GERMAIN (Cal. Bar #143334)
   germain@lalawyer.com
16311 Ventura Boulevard, Ste. 1200
Encino, CA 91436
Telephone: (818) 788-0877
Facsimile: (818) 788-0885

*Proposed Liaison Counsel for the Class*

**KESSLER TOPAZ**
   **MELTZER & CHECK, LLP**
NAUMON A. AMJED
   namjed@ktmc.com
DARREN J. CHECK
   dcheck@ktmc.com
RYAN T. DEGNAN
   rdegnan@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Pompano & Luzerne and*
*Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINE PARADIS, Individually and on Behalf of All Others Similarly Situated, | Case No.   2:16-CV-01011-DSF-RAO |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | **NOTICE OF MOTION AND MOTION OF POMPANO & LUZERNE FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| CARDIOVASCULAR SYSTEMS, INC., DAVID L. MARTIN, and LAURENCE L. BETTERLEY, | |
| Defendants. | Date:          May 16, 2016<br>Time:          1:30 p.m.<br>Courtroom:  840 (Los Angeles – Roybal)<br>Judge:        Hon. Dale S. Fischer |
| | <u>ORAL ARGUMENT REQUESTED</u> |

1

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 2

    I.      PRELIMINARY STATEMENT ................................................. 2

    II.     FACTUAL BACKGROUND ..................................................... 4

    III.   ARGUMENT ............................................................................. 6

          A.     Pompano & Luzerne Should Be Appointed Lead
                Plaintiff ......................................................................... 6

                1.     Pompano & Luzerne's Motion Is Timely ......................... 7

                2.     Pompano & Luzerne Have the Largest
                     Financial Interest in the Relief Sought by the
                     Class .................................................................... 7

                3.     Pompano & Luzerne Satisfy the Relevant
                     Requirements of Rule 23 ........................................ 8

                    a.    Pompano & Luzerne Are Typical ........................... 8

                    b.    Pompano & Luzerne Are Adequate ........................ 9

          B.     Pompano & Luzerne's Selection of Counsel Should
                Be Approved ................................................................ 11

    IV.   CONCLUSION ................................................................... 13

1
2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

**Cases**

4
5

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    258 F.R.D. 260 (S.D.N.Y. 2009) ...................................................3-4, 10

6
7

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) .......................................................*passim*

8
9

*In re Cohen v. United States Dist. Court for the N. Dist. of Cal.*,
    586 F.3d 703 (9th Cir. 2009) ............................................................ 11

10

*Feyko v. Yuhe Int'l Inc.*,
    No. CV 11-05511 DDP, 2012 WL 682882 (C.D. Cal. Mar. 2, 2012) ............. 4, 10

11
12

*Glauser v. EVCI Career Colleges Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ........................................................ 11

13
14
15

*McCracken v. Edwards Lifesciences Corp.*,
    No. 8:13-CV-1463,
    2014 U.S. Dist. LEXIS 2147 (C.D. Cal. Jan. 8, 2014) ........................ 10

16
17

*Shreves v. Xunlei Ltd.*,
    No. CV-15-04288-MWF,
    2015 WL 5446935 (C.D. Cal. Sept. 15, 2015) .................................... 8, 9

18
19

*In re Versata, Inc., Sec. Litig.*,
    No. 01-cv-1439-SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) ............... 3, 9

20

**Statutes**

21

15 U.S.C. § 78u-4(a) .........................................................................*passim*

22

**Other Authorities**

23
24

Fed. R. Civ. P. 23 ........................................................................... 8, 9

25

H.R. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 .................. 4, 10

26
27
28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on or about May 9, 2016, at 1:30 p.m., before the Honorable Dale S. Fischer, at the at the United States District Court for the Central District of California, located at Courtroom 840 of the Edward R. Roybal Federal Building and United States Courthouse, 255 East Temple Street, Los Angeles, California, lead plaintiff movants City of Pompano Beach General Employees' Retirement System and Luzerne County Retirement System (collectively, "Pompano & Luzerne") will respectfully move this Court for entry of an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): (1) appointing Pompano & Luzerne as Lead Plaintiff in the above-captioned action; (2) approving Pompano & Luzerne's selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") to serve as Lead Counsel for the class and Rosman & Germain LLP ("Rosman & Germain") to serve as Liaison Counsel for the class; and (3) granting any such further relief as the Court may deem just and proper.[1]

This Motion is made on the grounds that Pompano & Luzerne believe that they are the "most adequate plaintiff" under the PSLRA and, therefore, should be appointed Lead Plaintiff. Specifically, Pompano & Luzerne believe that they have the "largest financial interest" in the relief sought by the class in this litigation and also satisfy the applicable requirements of Federal Rule of Civil Procedure 23

---

[1] This Motion has been filed pursuant to Section 21D(a)(3)(B) of the Exchange Act, as amended by the PSLRA. Section 21D(a)(3)(B) provides that within 60 days after publication of the required notice, any member of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the underlying action. Consequently, counsel for Pompano & Luzerne cannot determine who the competing lead plaintiff candidates are at this time. As a result, counsel for Pompano & Luzerne has been unable to confer with opposing counsel as prescribed in Local Rule 7-3, and respectfully request that the conference requirement of Local Rule 7-3 be waived for this Motion.

MOTION OF POMPANO & LUZERNE FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF COUNSEL
CASE NO.: 2:16-CV-01011-DSF-RAO                                                                   1

because their claims are typical of other class members' claims and because they will fairly and adequately represent the interests of the class.

The Motion is made based upon the accompanying Memorandum of Points and Authorities in Support Thereof, the Declaration of Daniel L. Germain (the "Germain Decl.") filed herewith, the pleadings and other filings in this litigation, and such other written or oral argument as may be permitted by the Court. Pompano & Luzerne respectfully request oral argument.

WHEREFORE, Pompano & Luzerne respectfully request that the Court enter an order: (1) appointing Pompano & Luzerne as Lead Plaintiff pursuant to the PSLRA; (2) approving Pompano & Luzerne's selection of Kessler Topaz as Lead Counsel for the class and Rosman & Germain as Liaison Counsel for the class; and (3) granting such further relief as the Court may deem just and proper.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PRELIMINARY STATEMENT

Presently pending in this District is a securities class action lawsuit (the "Action") brought on behalf of purchasers of Cardiovascular Systems, Inc. ("CSI" or the "Company") securities between September 12, 2011 and January 21, 2016 (the "Class Period"). The Action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the PSLRA (15 U.S.C. §§ 78j(b) and 78t) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).[2]

The PSLRA allows any member of the purported class to move for appointment as lead plaintiff and sets forth the process for determining which

---

[2]   In addition to the Action, a related securities class action lawsuit alleging claims under the Exchange Act against Defendants is presently pending in the United States District Court for the District of Minnesota. *See Shoemaker v. Cardiovascular Systems, Inc., et al.*, No. 16-cv-00568-DWF-TNL (D. Minn. filed March 4, 2016). Pompano & Luzerne intend on simultaneously filing a motion seeking appointment as Lead Plaintiff and approval of counsel in *Shoemaker*.

movant is the "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(A)-(B); *In re Cavanaugh*, 306 F.3d 726, 729-730 (9th Cir. 2002). Under the PSLRA, the Court must appoint as lead plaintiff the movant: (1) making a timely motion under the PSLRA's 60-day deadline; (2) who asserts the largest financial interest in the litigation; and (3) who also satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Pompano & Luzerne respectfully submit that they are the presumptive "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff. Pompano & Luzerne have timely moved for lead plaintiff appointment. To the best of Pompano & Luzerne's knowledge, Pompano & Luzerne's loss of approximately $156,337 under either a first-in, first-out ("FIFO") or last-in, first-out ("LIFO") basis in connection with their transactions in CSI securities during the Class Period represents the largest known financial interest in the relief sought by the class. *See* Germain Decl., Exs. A-B.

In addition to asserting the largest financial interest, Pompano & Luzerne easily satisfy the relevant requirements of Rule 23 because their claims are typical of all members of the class and because they will fairly and adequately represent the class. To this end, Pompano & Luzerne have detailed their ability and commitment to actively direct this Action through the Joint Declaration of George Mitchell and Richard R. Hummer in Support of the Motion of Pompano & Luzerne for Appointment as Lead Plaintiff and Approval of Their Selection of Counsel (the "Joint Declaration") (Germain Decl., Ex. C). As such, Pompano & Luzerne are typical of the small, cohesive groups of investors appointed to serve as lead plaintiff under the PSLRA. *See, e.g.*, *In re Versata, Inc., Sec. Litig.*, No. 01-cv-1439-SI, 2001 WL 34012374, at *6-7 (N.D. Cal. Aug. 20, 2001) (appointing as lead plaintiff a small group of three investors); *In re Bank of Am. Corp. Sec., Derivative & ERISA*

*Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing a group of institutional investors as lead plaintiff).

Moreover, as institutional investors responsible for overseeing approximately $350 million in assets, Pompano & Luzerne are prototypical lead plaintiffs under the PSLRA. *See Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP, 2012 WL 682882, at *3 (C.D. Cal. Mar. 2, 2012) (recognizing that "institutional investors [are] exactly the type of sophisticated market participants Congress intended to take on the role of lead plaintiff following the PSLRA's reforms") (Pregerson, J.); H.R. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

Lastly, Pompano & Luzerne have retained experienced and competent counsel to represent the class. As the "most adequate plaintiff" under the PSLRA, Pompano & Luzerne's selection of Kessler Topaz as Lead Counsel and Rosman & Germain as Liaison Counsel for the class should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cavanaugh*, 306 F.3d at 734 ("the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff").

## II.   FACTUAL BACKGROUND

CSI, a Delaware corporation with its headquarters in St. Paul, Minnesota, designs and manufactures medical devices for the treatment of peripheral and coronary arterial diseases.

The Action alleges that throughout the Class Period, Defendants made false and misleading statements and failed to disclose material adverse facts about the Company's business and operations. Specifically, Defendants: (1) failed to disclose that CSI's marketing practices included unlawful off-label promotion of its medical

devices and kickback schemes that directly compensated health professionals; and (2) misrepresented the reasons for the Company's repeated guidance misses.

As set forth in the Action, on May 9, 2014, CSI disclosed that the United States Attorney's Office for the Western District of North Carolina (the "U.S. Attorney") had initiated an investigation to determine whether the Company had violated the False Claims Act, 31 U.S.C. § 3729, *et seq*., by submitting false reimbursement claims to Medicare and Medicaid. On this news, the price of Company shares declined $1.62 per share, or nearly 6%, from a close of $29.05 per share on May 9, 2014, to close at $27.43 per share on May 12, 2014.

After the May 9, 2014 disclosure, the Company initiated a sales force training and optimization effort purporting to cross-train and expand its sales team to sell both peripheral and coronary medical devices.

On July 8, 2015, a whistleblower complaint, originally filed on July 16, 2013, underlying the U.S. Attorney's investigation was unsealed. *See Thams v. Cardiovascular Systems, Inc.*, No. 3:13-cv-00404 (W.D.N.C. filed July 16, 2013) (the "Whistleblower Action"). Then, on August 5, 2015, CSI announced disappointing fourth quarter fiscal 2015 results below previously issued guidance. The Company explained that the lower than expected results were "primarily due to sales headcount being below the levels targeted in the company's sales optimization and expansion plan during the quarter." On this news, the price of Company shares declined $6.13 per share, or nearly 21%, from a close of $29.35 per share on August 5, 2015, to close at $23.22 per share on August 6, 2015.

On October 7, 2015, CSI disclosed that expected revenue for the first quarter of fiscal 2016 would not meet previously issued guidance. Again, the Company explained that the expected disappointing financial results were due to the continued optimization of its sales force. On this news, the price of Company shares declined

$3.01 per share, or more than 18%, from a close of $16.63 per share on October 7, 2015, to close at $13.62 per share on October 8, 2015.

Finally, on January 21, 2016, CSI announced that revenue for the second quarter of fiscal 2016 did not meet previously issued guidance, explaining that the results were caused by the "sales force expansion and implementation of a dual franchise model" that negatively affected "near term sales performance."  On this news, the price of Company shares declined $3.72 per share, or nearly 30%, from a close of $12.46 per share on January 21, 2016, to close at $8.74 per share on January 22, 2016.

III.   **ARGUMENT**

A.   **Pompano & Luzerne Should Be Appointed Lead Plaintiff**

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws.  15 U.S.C. § 78u-4(a)(1)-(3)(B)(i); *see also Cavanaugh*, 306 F.3d at 729 (discussing the process for selecting a lead plaintiff under the PSLRA).

First, a plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within 60 days of the publication of the notice.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Within 60 days after publication of the notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  15 U.S.C. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within 90 days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members.  *See* 15

U.S.C. § 78u-4(a)(3)(B); *see also Cavanaugh*, 306 F.3d at 729-32.  In selecting the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under the PSLRA is:

> the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, Pompano & Luzerne are the "most adequate plaintiff" because Pompano & Luzerne: (1) timely moved for appointment as Lead Plaintiff; (2) possess the "largest financial interest in the relief sought by the class"; and (3) "otherwise satisf[y] the requirements of Rule 23" for purposes of this Motion.  *Id.*

### 1.      Pompano & Luzerne's Motion Is Timely

The PSLRA allows any member of the class to move for appointment as lead plaintiff within 60 days of the publication of notice that the first action has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  Here, the above-captioned action was filed on February 12, 2016, and the relevant notice was published the same day in *Business Wire*.  *See* Germain Decl., Ex. D.  Accordingly, the deadline to seek appointment as lead plaintiff is April 12, 2016.  Pompano & Luzerne's Motion is timely.

### 2.      Pompano & Luzerne Have the Largest Financial Interest in the Relief Sought by the Class

The PSLRA presumes that the movant asserting the largest financial interest in the relief sought by the class and who otherwise satisfies the requirements of Rule 23

---

is the most adequate plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Cavanaugh*, 306 F.3d at 729-32.  Here, Pompano & Luzerne suffered losses of approximately $156,337 under either a FIFO analysis or a LIFO analysis in connection with their Class Period purchases of CSI securities.  *See* Germain Decl., Exs. A-B.  To the best of Pompano & Luzerne's knowledge, there are no other lead plaintiff movants asserting a larger financial interest in this litigation.

### 3.   Pompano & Luzerne Satisfy the Relevant Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to trigger the presumption of adequacy.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Rule 23(a) provides that a party may serve as a class representative if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. However, at this stage of litigation, a movant need only make "a prima facie showing that it satisfies" the typicality and adequacy requirements of Rule 23.  *Shreves v. Xunlei Ltd.*, No. CV-15-04288-MWF, 2015 WL 5446935, at *3 (C.D. Cal. Sept. 15, 2015) (Fitzgerald, J.); *see also Cavanaugh*, 306 F.3d at 729-31.

### a.   Pompano & Luzerne Are Typical

The typicality requirement is satisfied where the movant's claims are "similar to all class members."  *Xunlei*, 2015 WL 5446935, at *3.  Moreover, a "prima facie showing of typicality does not require that the claims of the movant be nearly identical to those of the class."  *Id.*  Pompano & Luzerne satisfy the typicality

requirement because, just like all other proposed class members, Pompano & Luzerne seek recovery for the losses on their investments in CSI securities that they incurred as a result of Defendants' misrepresentations and omissions. Thus, Pompano & Luzerne's claims arise from the same conduct as those of the other class members. Accordingly, Pompano & Luzerne are typical. *See id.*

### b. Pompano & Luzerne Are Adequate

The adequacy element of Rule 23 requires that the Lead Plaintiff "fairly and adequately protect the interests of the class." Rule 23(a). Thus, the adequacy element is satisfied where: (a) the movant is "willing[] to vigorously represent the class's claims"; (b) "the movant's interests do not conflict with those of the class"; and (c) "the movant's counsel is capable and qualified." *Xunlei*, 2015 WL 5446935, at *3.

Here, there are no conflicts between Pompano & Luzerne and the class as each seeks to recover losses caused by Defendants' false and misleading statements.

To further demonstrate their adequacy, Pompano & Luzerne submitted herewith the Joint Declaration and sworn certifications that affirm their understanding of the duties owed to class members through their commitment to oversee and monitor the prosecution of this litigation in the best interests of the class. *See* Germain Decl., Exs. A & C. The Joint Declaration also demonstrates that Pompano & Luzerne are a small, cohesive group consisting of two sophisticated investors that are capable of functioning separate and apart from their counsel to ensure that the litigation is prosecuted in the best interests of the class. *See* Germain Decl., Ex. C; *Versata*, 2001 WL 34012374, at *6-7 (finding a group composed of three investors that submitted declarations "providing background information and articulating why [each] member is seeking lead plaintiff status as part of the asserted group" to be "sufficiently cohesive and structured to maximize its individual strengths and sophisticated business knowledge" and to have

"exhibited a cooperative spirit"); *McCracken v. Edwards Lifesciences Corp.*, No. 8:13-CV-1463, 2014 U.S. Dist. LEXIS 2147, at *12-17 (C.D. Cal. Jan. 8, 2014) (appointing as lead plaintiff a group of institutional investors that submitted joint declaration describing procedures for overseeing litigation as lead plaintiff) (Staton, J.); *Bank of Am.*, 258 F.R.D. at 270 (appointing lead plaintiff group submitting "declarations demonstrating cooperative efforts among the funds").

Among other things, the Joint Declaration details:

- the due diligence and motivations underlying Pompano & Luzerne's decision to jointly seek appointment as Lead Plaintiff, including the significance of their financial losses and the desire to provide the class with representation by like-minded, highly-motivated, and sophisticated institutional investors (Joint Declaration at ¶¶ 4-5, 7-8);

- steps taken by Pompano & Luzerne to formalize their commitment to work together, including their participation in a conference call during which they discussed the merits of the litigation, their interest in serving jointly as Lead Plaintiff, case strategy, and measures to ensure effective coordination of their prosecution of the litigation (*id.* at ¶¶ 6, 8);

- Pompano & Luzerne's acknowledgment and acceptance of their duties and obligations to all class members if appointed as Lead Plaintiff and their commitment to seek the largest possible recovery for the class (*id.* at ¶¶ 2-6, 11); and

- the reasons underlying Pompano & Luzerne's selection of Kessler Topaz to serve as Lead Counsel and Pompano & Luzerne's commitment to oversee counsel and ensure that Kessler Topaz will aggressively, yet efficiently, prosecute this litigation under Pompano & Luzerne's direction (*id.* at ¶¶ 9-11).

In addition to satisfying the typicality and adequacy requirements of Rule 23, appointing Pompano & Luzerne also fulfills a critical legislative goal underlying the enactment of the PSLRA—encouraging sophisticated institutions with large financial interests to serve as lead plaintiff. Institutional investors such as Pompano & Luzerne are "exactly the type of sophisticated market participants Congress intended to take on the role of lead plaintiff following the PSLRA's reforms." *Yuhe Int'l*, 2012 WL 682882, at *3; *see also* H.R. Rep. No. 104-369, at *34 (1995), *reprinted in*

1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (citation omitted).

Further, Pompano & Luzerne have demonstrated their adequacy through their selection of Kessler Topaz to serve as Lead Counsel and Rosman & Germain as Liaison Counsel for the class. As discussed more fully below, Kessler Topaz is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to prosecute complex actions in an efficient, effective, and professional manner. Similarly, Rosman & Germain is well qualified to represent the class as Liaison Counsel.

### B. Pompano & Luzerne's Selection of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734 ("the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff"). Courts should not disturb the lead plaintiff's choice of counsel unless it is necessary to protect the interests of the class. *See In re Cohen v. United States Dist. Court for the N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice").

Here, Pompano & Luzerne have selected and retained Kessler Topaz to serve as Lead Counsel for the class. Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. *See* Germain Decl., Ex. E. The firm is actively engaged in complex litigation, and has

successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-1335-B (D.N.H. 2002) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litig.*, No. 09-MDL-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery).   Additionally, Kessler Topaz is currently serving as lead or co-lead counsel in several high profile securities class actions, including: *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. SACV 14-2004-DOC (JCGx) (C.D. Cal.);[3] *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-3852-GBD (S.D.N.Y.); and *Washtenaw County Employees' Retirement System v. Walgreen Co.*, No. 1:15-cv-03187 (N.D. Ill.).

Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA.  Specifically, the firm obtained a rare jury verdict in the class's favor after a week-long trial held before the Honorable Shira A. Scheindlin in 2014 in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658-SAS (S.D.N.Y.)—one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct).  The firm also obtained the largest damage award in Delaware Chancery Court history following a trial before Chancellor Leo E. Strine, Jr.  *See In re Southern Peru Copper Corp. Derivative Litig.*, No. 961-CS (Del. Ch.), *aff'd Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion).

---

[3]   Judge Carter has denied defendants' motion to dismiss claims in *In re Allergan, Inc. Proxy Violation Securities Litigation*.  *See Basile v. Valeant Pharm. Int'l, Inc.*, No. SACV 14-2004-DOC (JCGx), 2015 WL 7352005, at *15 (C.D. Cal. Nov. 9, 2015).

1   Finally, Rosman & Germain has substantial experience litigating complex
2   actions and is well qualified to represent the class as Liaison Counsel.  *See* Germain
3   Decl., Ex. F.
4       Thus, the Court can be assured that the class will receive the highest caliber of
5   legal representation should it approve Pompano & Luzerne's selection of Kessler
6   Topaz as Lead Counsel and Rosman & Germain as Liaison Counsel for the class.
7   **IV.    CONCLUSION**
8       For the reasons set forth above, Pompano & Luzerne respectfully request that
9   the Court: (1) appoint Pompano & Luzerne as Lead Plaintiff; (2) approve Pompano
10  & Luzerne's selection of Kessler Topaz as Lead Counsel and Rosman & Germain as
11  Liaison Counsel for the class; and (3) grant such other relief as the Court may deem
12  just and proper.
13  Dated: April 12, 2016                    Respectfully submitted,

14                                           **ROSMAN & GERMAIN LLP**
15                                           *s/ Daniel L. Germain*
16                                           DANIEL L. GERMAIN (Bar # 143334)
                                               germain@lalawyer.com
17                                           16311 Ventura Boulevard, Ste. 1200
                                             Encino, CA 91436
18                                           Telephone: (818) 788-0877
                                             Facsimile: (818) 788-0885
19                                           *Proposed Liaison Counsel for the Class*
20                                           **KESSLER TOPAZ**
                                               **MELTZER & CHECK, LLP**
21                                           NAUMON A. AMJED
                                               namjed@ktmc.com
22                                           DARREN J. CHECK
                                               dcheck@ktmc.com
23                                           RYAN T. DEGNAN
                                               rdegnan@ktmc.com
24                                           280 King of Prussia Road
                                             Radnor, PA 19087
25                                           Telephone: (610) 667-7706
                                             Facsimile: (610) 667-7056
26
27                                           *Attorneys for Pompano & Luzerne and*
                                             *Proposed Lead Counsel for the Class*
28